LYNCH, Circuit Judge.
David Rodriguez-Pacheco appeals from his sentence of thirty months’ imprisonment and three years of supervised release following his guilty plea to the crime of possession of child pornography. See 18 U.S.C. § 2252(a)(4)(B); see generally Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2251 et seq. Utilizing the advisory sentencing guidelines, the district court held that Rodriguez-Pacheco possessed at least ten images of child pornography on the hard drive of his computer. That finding resulted in a two-level increase to defendant’s sentencing guideline range. See U.S.S.G. § 2G2.4(b)(2) (2002). Consideration of the guidelines was an appropriate first step in the court’s sentencing determination. United States v. Jimenez-Beltre, 440 F.3d 514, 518-19 (1st Cir.2006) (en banc).
Rodriguez-Pacheco presents a single legal issue on appeal: whether the prosecution must, in the absence of direct evidence, produce expert opinion testimony that a particular pornographic image is of a real, non-virtual child, in order to meet its burden of proof by a preponderance of evidence at sentencing. Defendant argues that as a matter of law the Supreme Court’s decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), requires the government to produce such expert opinion testimony, even in the absence of direct testimony provided by defendant, to meet the burden of proof of guilt beyond a reasonable doubt, and so also the lesser burden of proof by a preponderance of evidence at sentencing.[1] He argues for a per se rule *437 of reversal in the absence of such expert opinion testimony as to meet its burden to each of ten images.
We hold that the premise of the argument is wrong: Free Speech Coalition does not impose any requirement that the government produce such expert opinion testimony or be deemed to have failed to establish proof by a preponderance of evidence. This is the view of every circuit that has addressed the question.
Further, Free Speech Coalition does not overrule this court’s decision in United States v. Nolan, 818 F.2d 1015 (1st Cir.1987), holding that such expert opinion testimony — that a photographic image is of a real child — is not required to meet the government’s burden of proving guilt beyond a reasonable doubt. Id. at 1018-20. No other circumstance leaves this panel free to overrule Nolan. We reject, as we have before, such a per se approach that expert opinion testimony on this issue is a sine qua non. Reviewing the totality of the evidence, we affirm the sentence.
I.
Defendant was charged on September 1, 2004 in a Superseding Indictment which alleged that he knowingly possessed one or more items that contained a visual depiction of an actual person under the age of eighteen engaged in sexually explicit conduct, and that the items were shipped in interstate or foreign commerce by means of a computer, in violation of 18 U.S.C. § 2252(a)(4)(B). The Superseding Indictment also made the sentencing allegation that RodriguezAPacheco knowingly possessed at least ten such images.
On September 27, 2004, while the jury was being selected, defendant entered a straight plea of guilty to the requisite knowing possession of at least one such image which traveled in interstate commerce. He did not agree, however, that he possessed at least ten images of minors engaging in sexually explicit conduct, which would enhance his guidelines sentencing range under U.S.S.G. § 2G2.4(b)(2) (2002). The court accepted defendant’s guilty plea and stated that it would address the enhancement issue at sentencing. Defendant waived jury determination of the disputed sentencing enhancements. At that time, the government indicated it had expert reports to support its position on guilt and sentencing. The government had prepared its case under what was then this circuit’s rule, short-lived and later withdrawn, that the government was obligated to produce an expert opinion as to reality, even in the absence of any evidence to the contrary, in order to meet its burden of proof beyond a reasonable doubt. United States v. Hilton (Hilton I), 363 F.3d 58, 65-66 (1st Cir.2004).
The court held further hearings on September 29, 2004,[2] and on several days in April 2005. The government offered evidence on a sample of the 234 pornographic images taken from defendant’s computer. The government presented a pediatrician, Dr. Pedro Jaunarena-Perez, who testified using the Tanner scale that ten of the *438 images obtained from defendant’s computer were of children under age eighteen.
The government also presented expert testimony on the issue of whether the images were of real, non-virtual people. The court accepted Dr. Richard Vorder Bruegge of the FBI as an expert; he testified both as to the methodology to be used in looking at images to determine whether the image was of a real person and to his conclusions that Exhibits 5 through 15 and Exhibit 17 contained images of real people. The parties agree that the prosecution did not ask Dr. Vorder Bruegge his opinion as to whether Exhibit 16 was of an actual person. There is no suggestion the expert did not have an opinion; he simply was not asked for it.[3]
When the sentencing hearing resumed on April 26, 2005, defendant, relying on Free Speech Coalition, argued that as a matter of law the prosecution was required to provide expert opinion testimony that each of the ten images was of ah actual child, and that the prosecution had failed to do so as to Exhibit 16 because Dr. Vorder Bruegge did not testify as to whether the depicted child was real or not. The district court rejected the argument that Free Speech Coalition imposed any such requirement. It did hold that Nolan had not been overruled and was binding precedent.
The district court later found that Exhibit 16 was of a real child which satisfied the ten-image requirement of U.S.S.G. § 2G2.4(b)(2) (2002). The court explained that it was competent to make factual findings as to whether the child in Exhibit 16 was real in light of the evidence of record before it. The district court found that the image in Exhibit 16 portrayed sexually explicit conduct and was of an actual child. The court imposed the two-level guidelines increase, based on its own review of the image, the expert testimony of Dr. Jau-narena-Perez that the image was of a minor, and its use of Dr. Vorder Bruegge’s testimony as to the methodology for distinguishing between real and virtual images; the court also noted the absence of any testimony that the images were not of actual children, to counter this evidence.
The district court, under the post-Booker advisory guidelines system, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), took into account mitigating factors and sentenced Rodriguez-Pacheeo to thirty months of imprisonment and three years of supervised release.
II.
A. Effect of Free Speech Coalition
Our standard of review for legal questions, including those about the effect of Free Speech Coalition, is de novo. United States v. Dunning, 312 F.3d 528, 531 (1st Cir.2002). The question of whether or not a particular image is of a virtual child or of a real child is an issue of fact, to be determined by the trier of fact. United States v. Family, 389 F.3d 649, 654 (6th Cir.2004), abrogated on other grounds by United States v. Williams, 411 F.3d 675, 678 n. 1 (6th Cir.2005). The standard of review for determinations of fact under the sentencing guidelines is for clear error. United States v. Rosario-Peralta 199 F.3d *439 552, 568 (1st Cir.1999). We give due deference to the district court’s findings .of fact under the guidelines. United States v. Duclos, 214 F.3d 27, 31 (1st Cir.2000).
The prosecution must prove beyond a reasonable doubt that the image is of an actual child in order to establish guilt. United States v. Syphers, 426 F.3d 461, 465 (1st Cir.2005); United States v. Hilton (Hilton II), 386 F.3d 13, 18 (1st Cir.2004); accord United States v. Sims, 428 F.3d 945, 957 (10th Cir.2005). The government bears the burden, by a preponderance of the evidence, to make the showing that the child is a real child for sentencing purposes. See U.S.S.G. § 6A1.3 (2002) (commentary); see also United States v. Zuleta-Alvarez, 922 F.2d 33, 37 (1st Cir.1990).
In Nolan, this circuit rejected a per se rule that the government must produce expert testimony in addition to the images themselves, in order to prove beyond a reasonable doubt that the images depicted are of real children. Nolan, 818 F.2d at 1018-20. Nolan involved magazine photographs which the court found to be of real children in light of, inter alia, the clarity of the photographs and the fact that the same child was in several photographs in a variety of poses. Id. at 1018. The defendant in Nolan argued that “the prosecution failed to prove that the pictures were not composite representations or otherwise faked or doctored, or ... computer-generated” or even “fabricated using photographs of nude children taken from legitimate sources.” Id. at 1016. Nolan held that the mere possibility, unsupported by evidence, that the images could have been produced by use of technology and not using real children was not sufficient to reject a lower court’s ruling founded on reasonable inferences derived from experience and common sense.
We agree with the district court that Nolan has not been overruled by Free Speech Coalition. To start, Free Speech Coalition did not arise from a criminal prosecution. Rather,’the case was a civil suit seeking declaratory and injunctive relief; it concerned a First Amendment facial overbreadth attack on certain provisions of the CPPA. 535 U.S. at 243-44, 122 S.Ct. 1389. The Court held overbroad and unconstitutional the provision of 18 U.S.C. § 2256(8)(B),[4] which stated:
(8) “child pornography” means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
(B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct.
Free Speech Coalition, 535 U.S. at 241, 256, 122 S.Ct. 1389 (emphasis added). The First Amendment overbreadth issue arose from the “or appears to be” language of that section, by which Congress sought to punish possession of virtual images, which did not involve real children. Id. at 241.
Earlier, in New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court had upheld against First Amendment attack a state child pornography statute which did not purport to prohibit virtual images, but only images of real children. Id. at 765, 773-74, 102 S.Ct. 3348. The Court in Ferber upheld the state statute against First *440 Amendment attack, even though the statute prohibited material that would not be obscene,[5] because the production of child pornography utilizing real children necessarily harmed the children. Id. at 759-60, 102 S.Ct. 3348; id. at 758 & n. 9, 102 S.Ct. 3348 (noting the legislative judgment that “the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child[ren]”); see also United States v. Frabizio, 459 F.3d 80, 84 (1st Cir.2006) (discussing the harm done to children through the production of child pornography).
In Free Speech, Coalition, by contrast, the production of virtual images (the possession of which was prohibited by the CPPA) did not directly harm real children. 535 U.S. at 236, 122 S.Ct. 1389 (“[T]he CPPA prohibits speech that records no crime and creates no victims by its production. Virtual child pornography is not ‘intrinsically related’ to the sexual abuse of children.” (quoting Ferber, 458 U.S. at 759, 102 S.Ct. 3348)). As a result, Free Speech Coalition held that 18 U.S.C. § 2256(8)(B) was overbroad because of the “or appears to be” clause. Id. at 256, 122 S.Ct. 1389.
The Court in Free Speech Coalition did not rule on the nature of the proof the government must produce to demonstrate that an image of a child was of a real child. That argument was not before the Court, which had before it only the issue of the facial constitutionality of the statute. There was also no issue as to whether the statute had been unconstitutionally applied to an image which the government had failed to prove was of a real child.
The remaining provisions of the CPPA, not struck, remain intact. The unconstitutional. provisions of the Act, which expanded the prohibition against child pornography to encompass materials that did not involve the use of real children, are severable from the CPPA, and did not affect the constitutional viability of provisions regulating possession of traditional child pornography. See United States v. Kimler, 335 F.3d 1132, 1141 (10th Cir.), cert. denied, 540 U.S. 1083, 124 S.Ct. 945, 157 L.Ed.2d 759 (2003); United States v. Kelly, 314 F.3d 908, 911 (7th Cir.), cert. denied, 538 U.S. 1001, 123 S.Ct. 1923, 155 L.Ed.2d 829 (2003); United States v. Hall, 312 F.3d 1250, 1259 (11th Cir.2002), cert. denied, 538 U.S. 954, 123 S.Ct. 1646, 155 L.Ed.2d 502 (2003). Since the Supreme Court did not address the issue before us, and since the statute as excised survives, our pre-CPPA case law, including Nolan, survives as well.
Our reading of the effect of Free Speech Coalition agrees with that of every circuit that has addressed the question. For example, in United States v. Irving, 452 F.3d 110 (2d Cir.2006), the court upheld a jury verdict convicting defendant of possession of child pornography based on videos where the government offered no proof beyond the videos themselves that the images were of real children. Id. at 122. Rejecting the argument that Free Speech Coalition necessarily created a bright-line rule, the court noted:
Although the Supreme Court noted the possible evidentiary difficulty of distinguishing virtual and actual child pornography, it did not establish a bright-line rule requiring that the government proffer a specific type of proof to show the use of an actual child.
*441 Id. at 121 (citing Free Speech Coalition, 535 U.S. at 254-56, 122 S.Ct. 1389). Free Speech Coalition does not lay down “the absolute requirement that, absent direct evidence of identity, expert testimony is required to prove that the prohibited images are of real, not virtual, children.” Kimler, 335 F.3d at 1142; see also Family, 389 F.3d at 653-54; United States v. Slanina, 359 F.3d 356, 357 (5th Cir.2004) (per curiam); United States v. Deaton, 328 F.3d 454, 455 (8th Cir.2003) (per curiam). The same cases universally accept the proposition that juries are capable of distinguishing between real and virtual images, without expert assistance. Irving, 452 F.3d at 122 (video images); Farrelly, 389 F.3d at 654; Slanina, 359 F.3d at 357; Kimler, 335 F.3d at 1142; Deaton, 328 F.3d at 455. In a number of cases evaluating the effect of erroneous jury instructions, the appellate courts have examined images themselves and, on that basis, determined that those images were of real children. See Becht v. United States, 403 F.3d 541, 549 (8th Cir.2005); Hall, 312 F.3d at 1260; United States v. Richardson, 304 F.3d 1061, 1064 & n. 2 (11th Cir.2002).
B. Vitality of Nolan
This leaves the defendant’s alternate argument that technology has progressed so far that we should abandon the approach that there is no per se rule that the government must provide an expert opinion that an image is of a real child. We understand the dissent to join this argument, but not to argue that Free Speech Coalition itself overrules Nolan.
A panel of this court is normally bound to follow an earlier panel decision that is closely on point, unless an exception exists to the principles of stare decisis. Williams v. Ashland Eng’g Co., 45 F.3d 588, 592 (1st Cir.1995) (subsequent case history omitted). As a leading commentator has stated:
The doctrine of stare decisis provides that courts must abide by or adhere to cases that have been previously decided and that a legal decision on an issue of law that is contained in a final judgment is binding in all future cases on the court that made the legal decision and all other courts that owe obedience to that court. In other words, the doctrine of stare decisis incorporates two principles:
(1) a court is bound by its own prior legal decisions unless there are substantial reasons to abandon a decision; and
(2) a legal decision rendered by a court will be followed by all courts inferior to it in the judicial system.
3 J. Moore et al., Moore’s Manual—Federal Practice and Procedure § 30.10[1] (2006) (footnotes omitted).
In this circuit, we have recognized two exceptions to this stare ■ decisis rule.[6] The first exception applies when “[a]n existing panel decision [is] undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling.” Williams, 45 F.3d at 592. This exception does not apply here, as there is no Supreme Court opinion, en banc opinion of this circuit, or statute that overrules Nolan.
*442 We have also recognized a second, limited exception that permits one panel to overrule another in “those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.” Id. The second exception likewise does not apply to this case. The dissent argues that we should overrule Nolan under this second exception in part because of technological developments. But the “fresh developments” considered in Williams were not technological changes but rather fresh developments in the law in the form of the views of another circuit court. Id.; see also Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 145 (1st Cir.2000).
We made clear the limits of the second Williams exception in Eulitt v. Maine, 386 F.3d 344 (1st Cir.2004), stating that “[a] second exception exists when recent Supreme Court precedent calls into legitimate question a prior opinion of an inferior court.” Id. at 350 (emphasis added) (citing Carpenters Local, 215 F.3d at 141 (overruling circuit precedent in light of two Supreme Court cases); Crowe v. Bolduc, 365 F.3d 86, 89, 92 (1st Cir.2004) (overruling circuit precedent in light of a Supreme Court case)). Further, in United States v. Guzman, 419 F.3d 27 (1st Cir.2005), the court described the second Williams exception as applying in “instances that fairly may be described as hen’s-teeth rare.” Id. at 31.
The Nolan rule is that the issue on appeal of whether a pornographic image is of a real child is to be treated as a sufficiency of the evidence question, evaluating the evidence as a whole. There is no reason, much less a compelling reason based on new facts, to abandon that rule,[7] even assuming that new fact developments may lead to abandonment by one panel of a prior circuit precedent. The Supreme Court has recognized in itself (but not necessarily in the circuit courts) the power to depart from stare decisis “to bring its opinions into agreement with experience and with facts newly ascertained.” Vasquez v. Hillery, 474 U.S. 254, 266, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 412, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)) (internal quotation marks omitted). The present rule, rather than an inflexible rule requiring that expert evidence must be provided by the prosecution, reflects a far better method to accommodate developments in technology. No occasion is presented here to depart from the principles of stare deci-sis based on technological developments.
Defendant and the dissent also rely on language in Free Speech Coalition indicating that Congress was concerned that new technology made it possible to produce realistic virtual images and, as technology improved, experts may have difficulty distinguishing virtual images from real im *443 ages. But defendant and the dissent insufficiently appreciate language in Free Speech Coalition that refers to the continuing use of real children:
If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. New pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.
Free Speech Coalition, 535 U.S. at 254, 122 S.Ct. 1389.
Whatever improvements may eventually be made in technology,[8] the Supreme Court’s observation about the market for child pornography is still correct. There is no basis to assume that the producers of child pornography have widely converted to exclusive use of virtual pornography. Even before Free Speech Coalition, Nolan made the point that, given the proliferation and sheer number of the pornographic images available, common sense strongly suggests that many of the images on the market are of real children. 818 F.2d at 1018.
Nor is there any reason to think that the exploitation of real children to produce pornography has ceased. We know as a matter of fact that the market continues using real children to produce pornography because the cases, including this one, continue to have in them direct evidence that a real child was used. See, e.g., Frabizio, 459 F.3d at 82 & n. 3; United States v. Smith, 459 F.3d 1276, 1287 (11th Cir.2006); United States v. Mack, 452 F.3d 744, 745 (8th Cir.2006). In this case, multiple images taken from defendant’s computer were identified as depicting real children, after comparing the images to those compiled in the Child Exploitation and Obscenity Reference File and the database maintained by the FBI’s Child Victim Identification Program. Defendant himself admitted that one of the images was of a real child.
Nor is there any reason to assume that particular images on which a prosecution is based have been produced by such superi- or technology. In this case, for example, certain of the images had been published in magazines from the 1970s or 1980s, well before there was the capacity to do any realistic form of virtual imaging.
*444 The burden of proof remains on the government to prove the pornographic image is of a real child. The overarching legal point is the holding stated in Nolan: “[T]he prosecution was not required, as part of its affirmative case, to rule out every conceivable way the pictures could have been made other than by ordinary photography.” 818 F.2d at 1020; see also United States v. Smith, 680 F.2d 255, 259 (1st Cir.1982) (“The Government ... need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt.”); 26 J. Moore et al., Moore’s Federal Practice § 629.05[2] (3d ed. 2006) (“Proof beyond a reasonable doubt does not require that the government adduce evidence excluding all reasonable defense theories, thereby leaving only the conclusion of guilt independently proved.”).
We should not be misunderstood: the government at all times has the burden of proof by a preponderance of the evidence at sentencing, and the defendant has no burden. There is nothing inconsistent between the government’s having that burden and Nolan’s statement that the defendant, while under no obligation to do so, was “free to have presented evidence of his own suggesting that the picture[] used other than real subjects. He could have called an expert to testify as to how photographs like [this one] could have been made without using real children.” Nolan, 818 F.2d at 1020. If defendant had chosen to mount a defense of this type and presented such expert testimony, and had the government not called an expert to explain why the image was real, the government ran the risk of not persuading the trier of fact. This does not shift the burden of proof. The evaluation of the sufficiency of the evidence is done on the record as a whole, not on “bright line” tests such as the one defendant advances.
C. Unpreserved Arguments Made by the Dissent
The dissent injects new arguments into the case which were not raised by Rodriguez-Pacheco in the district court or on appeal. As such, the arguments have been waived. See United States v. Gobbi, 471 F.3d 302, 312 n. 4 (1st Cir.2006).
The dissent first makes the novel argument that the proceedings below were unfair and so the defendant was sandbagged. Defendant never made this argument at any time. If defendant thought there was procedural unfairness, he would have said so. The dissent’s procedural unfairness argument is without merit in any event. The argument seems to be that defendant came to expect there would be an expert opinion on each of the ten images, and his disappointed expectations mean the case should be remanded. The argument, which has other deficiencies, ignores the fact that when the government prepared the case, the panel opinion in Hilton I required expert testimony, and so the case proceeded on that basis. Before the expert gave his testimony, the law had changed, the rule in Hilton I had been withdrawn, and the defense was well aware of the change. Defendant knew from the outset of the sentencing hearing that the government would present an expert on the reality of the images. Yet he chose not to introduce his own expert, or offer any evidence of his own that the images were not of real children. Further, the district court’s reference to “scientific, technical or other specialized skill” to help it determine the reality of children depicted in the prosecution’s exhibits came when it explained its reasons for admitting Dr. Vorder Bruegge as an expert witness, over defense counsel’s objection. That could *445 not have misled defendant.[9]
The dissent next makes the novel argument that it was error for the district court not to sua sponte infer from the government’s failure to ask Dr. Vorder Bruegge for his opinion on Exhibit 16, that he would have said, if asked, that the image was not of a real child. The defense did not ask for such an inference;[10] its argument was that, whatever the government’s reasons for not questioning the expert on Exhibit 16, only an expert, not a court or even a jury as factfinder, could make that determination.
The dissent also gains no support from cases in which adverse inferences are requested and drawn, based on a party’s failure to produce a witness at all. See, e.g., Olszewski v. Spencer, 466 F.3d 47, 61 (1st Cir.2006). Here, there was no failure to produce a witness, only a failure to ask a particular question from a produced witness. Further, no inference can be drawn, contrary to the dissent, from the district court’s failure to take over the examination of the witness when Exhibit 16 was not raised during questioning.
Finally, the dissent makes another argument which was not made by defendant on appeal. Defendant’s argument on appeal is that the law requires the government to produce the opinion of an expert that an image is of a real child, and, since no such opinion was offered, therefore the evidence was insufficient, regardless of the other evidence. We have rejected that legal proposition. The dissent makes a different argument that the remaining evidence was insufficient as a matter of evidence. The dissent confuses the role of the expert with the district court’s role as factfinder. That argument is also waived. Nonetheless, we discuss why the argument fails.
The government met its burden of proof by a preponderance of the evidence. The district court as finder of fact was entitled to use Dr. Vorder Bruegge’s testimony about criteria relevant to determining whether an image is real to assist it in making its own determination concerning Exhibit 16. The expert testified that computer-generated images have difficulty recreating the characteristics of human eyes and skin. He also stressed the importance of evaluating how individuals in an image interact with one another and their environment — factors to consider included shadows, gravity, and the effect of pressure on a human body. The expert also evaluated flesh and muscle tone on human images. The district court judge adopted Dr. Vorder Bruegge’s methodology, making clear that his conclusion as to the reality of the child in Exhibit 16 was “[b]ased on the testimony that [the expert] provided as to all of the other photographs [and] the criteria that he was using.” Further, the judge “conclude[d] that the skin, that the tonation of the muscles, that both hands on the thighs of the male impress the Court that this is not a virtual image but it is a real image.” The district court made these findings, applying Dr. Vorder Bruegge’s methodology. That is sufficient. The district court had sufficient evidence, and no evidence to the con *446 trary,[11] to conclude that Exhibit 16 depicted a real child.
Having addressed the dissent’s additional arguments, we note that defendant himself does not otherwise challenge the court’s finding that the tenth image is of a real child.
The sentence is affirmed.

. On appeal, defendant does not dispute the court's finding that one of the images is of a *437 prepubescent minor or a child under the age of twelve. Nor is there any dispute that the images meet the definition of sexually explicit conduct.

. The withdrawal of the Hilton I rule occurred on September 27, 2004, the same day as defendant's change of plea hearing. There is no indication that the court or the parties were aware that the Hilton I rule had been withdrawn at any time during the change of plea hearing or the sentencing evidentiary hearing on September 29, 2004. The panel majority opinion was withdrawn and replaced by a per curiam opinion, United States v. Hilton (Hilton II), 386 F.3d 13 (1st Cir.2004), which did not contain a rule requiring expert testimony. Id. at 18-19.

. The government made clear that it would present Dr. Vorder Bruegge as an expert on whether a series of particular exhibits, including Exhibit 16, were of real children, and that the expert had examined each image. The direct examination did not entirely go image by image. For example, the prosecution jumped from Exhibits 7 and 8 to Exhibits 21 and 22, and then to Exhibit 24. Frequent jumps were made to connect later numbered exhibits to earlier ones. This happened with Exhibit 15. The prosecution then simply went on to ask Dr. Vorder Bruegge about Exhibit 17.

. The Court also held unconstitutional 18 U.S.C. § 2256(8)(D), which extended the prohibition of child pornography to any sexually explicit image that "conveys the impression” that it depicts "a minor engaging in sexually explicit conduct.”- Free Speech Coalition, 535 U.S. at 242, 258, 122 S.Ct. 1389.

. Under Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the test for obscenity is whether the work, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. Id. at 24, 93 S.Ct. 2607.

. Williams cited generally to Colby v. J.C. Penney Co., 811 F.2d 1119 (7th Cir.1987), which concerned the misapplication by a district court of stare decisis principles. Colby discussed the differences between deference due to authoritative versus persuasive decisions and the wisdom of one circuit court considering the views of other circuit courts in order to maintain uniformity in federal law. Id. at 1123. Here, of course, every circuit court to consider the issue has rejected defendant’s proposed rule.

. The dissent attempts to analogize to a drug identity case and claims that expert testimony or at least the opinion of a knowledgeable lay person is required to establish the illicit nature of a substance. This is not accurate. “Proof based on scientific analysis or expert testimony is not required to prove the illicit nature of a substance, and identification of a substance as a drug may be based on the opinion of a knowledgeable lay person.” United States v. Walters, 904 F.2d 765, 770 (1st Cir.1990) (emphasis added). In Walters, we also said that "[a]s a general matter, ‘[(Identification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt.' ” Id. (second alteration in original) (quoting United States v. Harrell, 737 F.2d 971, 978 (11th Cir.1984)).

. The dissent cites several articles on the state of technology. At most, the articles describe the kinds of photographic alterations that are possible with recent technological advances, but they do not say that images of real and virtual people are indistinguishable. See M. Aspan, Media; Ease of Alteration Creates Woes for Picture Editors, N.Y. Times, Aug. 14, 2006, at C4 (noting only that photographic alterations of real images may be difficult to detect); H. Farid, Digital Doctoring: How to Tell the Real from the Fake, 3 Significance 162, 162-66 (2006), available at http://www. cs.dartmouth.edu/farid/publications/ significance06.pdf (describing the possibility of creating composite photographs using existing images of real people, but not commenting on the creation of realistic images of virtual people); C. Johnston, Digital Deception, Am. Journalism Rev., May 1, 2003, at 10 (discussing composite images of real people, not images of virtual people); S.L. Leach, Seeing Is No Longer Believing, Christian Sci. Monitor, Feb. 2, 2005, at 15 (describing methods of photographic manipulation, but not suggesting that current technology allows creation of virtual people that are indistinguishable from real people). The dissent also cites a law review note for the proposition that "[t]here is wide agreement that an ordinary person cannot generally tell a real image from a virtual one.” T.J. Perla, Note, Attempting to End the Cycle of Virtual Pornography Prohibitions, 83 B.U. L.Rev. 1209, 1220 (2003). However, the note provides no support for this claim beyond a reference to a commercial brochure advertising virtual image rendering hardware. Id. at 1220 n. 60. The brochure makes no claims as to the ability of a non-expert to distinguish between real and virtual images of people.

. The dissent quotes the district court at the September 29, 2004 hearing as stating, “I can't make a finding unless I have an expert that this is a minor.'' The district court was obviously unaware at the time that this requirement, imposed by Hilton I, had been withdrawn by Hilton II on September 27, 2004.

. It is clear from the prosecutor's statements at the hearing that she thought she had asked Dr. Vorder Bruegge’s opinion on Exhibit 16. The prosecutor even accused the defense of misstating the record. The court was then required to go back into the record.

. When the court commented on the failure of the defendant to produce an expert, and so it had to use its own judgment, it was in the context of the defendant’s argument that a factfinder could not, without particular expert testimony, have an opinion as to the reality of a depicted child. The district court drew its own conclusion that the image was real, noting that it was given no testimony that the image was not real.