STAHL, Senior Circuit Judge,
concurring in the judgment.
I agree with the majority’s result, which is required by precedent, and much of its reasoning. I write separately to express my dissatisfaction with our current evidentiary standard, as set forth in United States v. Rodriguez-Pacheco, 475 F.3d 434 (1st Cir.2007), and applied in this case, for determining whether the government has sufficiently proven that the photographs on which the defendant’s conviction was based depicted real children.
I.
The federal prohibition against child pornography cannot extend to images that do not depict an actual child without running afoul of the First Amendment. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). Thus, “in order to establish guilt,” the government “must prove beyond a reasonable doubt” that the images providing the basis for a child pornography prosecution depict real, as opposed to virtual, children. Rodriguez-Pacheco, 475 F.3d at 439. The Supreme Court has warned that this burden cannot be lightly shifted onto the defendant:
[t]he Government raises serious constitutional difficulties by seeking to impose on the defendant the burden of proving his speech is not unlawful.... [T]he evidentiary burden is not trivial. Where the defendant is not the producer of the work, he may have no way of establishing the identity, or even the existence, of the actors. If the evidentiary issue is a serious problem for the Government, as *13 it asserts, it will be at least as difficult for the innocent possessor.
Free Speech Coalition, 535 U.S. at 255-56, 122 S.Ct. 1389.
This circuit, following in the footsteps of a number of other circuits, has refused to interpret Free Speech Coalition as “lay[ing] down ‘the absolute requirement that, absent direct evidence of identity, expert testimony is required to prove that the prohibited images are of real, not virtual, children.’” Rodriguez-Pacheco, 475 F.3d at 441 (quoting United States v. Kimler, 335 F.3d 1132, 1142 (10th Cir.2003)); see also United States v. Irving, 452 F.3d 110, 121 (2d Cir.2006)[8]; United States v. Slanina, 359 F.3d 356, 357 (5th Cir.2004)(per curiam); United States v. Deaton, 328 F.3d 454, 455 (8th Cir.2003)(per curiam). Nevertheless, we have emphasized that “[t]he burden of proof remains on the government to prove the pornographic image is of a real child.” Rodriguez-Pacheco, 475 F.3d at 444; United States v. Hilton, 386 F.3d 13, 18 (1st Cir.2004)(“It bears repeating that the government is not released from its burden of proof by a defendant’s failure to argue, or by an absence of evidence otherwise suggesting, the artificiality of the children portrayed. That the children in the images are real amounts to an element of the crime which the government must prove, the burden of which should not be displaced to the defendant as an affirmative defense.”).
Thus, while we currently recognize no per se rule requiring the government to present expert testimony as to the reality of the children in the images, the government still must present sufficient evidence to enable a jury to find beyond a reasonable doubt that the children are real. The Rodriguez-Pacheco court looked to United States v. Nolan, 818 F.2d 1015 (1st Cir.1987), for the proposition that a factfinder can, unaided, distinguish photographs of actual children from virtual images. The court in Nolan held that “the test for a factfinder’s power to judge evidence without expert help is ... whether the subject is within the range of normal experience and knowledge.” Id. at 1018. Nolan was decided over twenty years ago, however, and the rapid progress of digital imaging technology has rendered it obsolete even on its own terms. Technological advances in recent years have been such that an untrained eye simply cannot easily distinguish a photograph of a real person from a *14 virtual image by merely eyeballing the photographs in question. Indeed,
determining whether an image is real or virtually created is not only no longer within the “range of normal experience and knowledge” of the average person, but it may also very well be difficult for even experts [to say] whether the pictures were made by using real children or by using computer imaging.... The scientific evidence available today is overwhelmingly contrary to that which existed in Nolan’s day.... There is simply no question that today it is possible to create virtual images of humans that are indistinguishable from the real thing.
Rodriguez-Pacheco, 475 F.3d at 462 (Torruella, J., dissenting)(internal quotation marks, citations omitted).[9] The situation is further complicated by the advent of technology that enables the digital manipulation of images of actual people — for example, by airbrushing away wrinkles, trimming extra pounds, or even mixing and matching body parts from different individuals. See, e.g., Switched.com, Worst Airbrushed Celebs of 2007 ... So Far, http://www.switched.com/2007/08/30/worsW airbrushed-celebs-of-2007-so-far/ (last visited Apr. 25, 2008)(comparing digitally retouched and unretouched photographs of various celebrities).
I do not question that many, and perhaps most, of the images traded daily by child pornographers depict actual children. The government cannot prove its case by the law of averages, however, but must prove it with reference to the particular images that form the basis of the child pornography prosecution at hand. Thus, the Rodriguez-Pacheco court gains little support by coopting the Supreme Court’s reasoning that “ ‘[i]f virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.’ ” Rodriguez-Pacheco, 475 F.3d at 443 (quoting Free Speech Coalition, 535 U.S. at 254, 122 S.Ct. 1389).
The logic of adopting this rather odd assumption about the dynamics of the child pornography market as a rationale for concluding that the child in any given picture is unlikely to be virtual rather than real is questionable at best. For starters, the assumption itself is arguably premised on a fallacy. It seems inappropriate to cast the pedophile, an individual seeking to satiate a twisted sexual urge, as a rational economic actor. It is more sensible to imagine that a large part of the depraved thrill engendered by the creation of these images is in the abuse of a live subject, which the pornography creator can then document in order to relive the experience and share it with like-minded individuals. Also, while some child pornographers may be sufficiently technologically adept to create realistic “virtual” children, others may not be and so would have to rely on taking pictures of the real thing, resulting in the production of a mix of real and virtual images. If the real and the virtual are more or less indistinguishable, once both are released into the marketplace the real images would not be displaced by virtual substitutes simply because most consumers of such images would not be able to differentiate the two. And finally, whether the child pornography market as a whole *15 is composed of images of mostly virtual or mostly real children does not change the government’s burden to prove that the images forming the basis of any specific child pornography prosecution depict real children, in order for a conviction to be sustained.
To meet its burden the government therefore should be obliged to introduce, and indeed in many cases has introduced, evidence that provides some reasonable basis for determining that the children depicted in the images are real. See, e.g., United States v. Hoey, 508 F.3d 687, 689 (1st Cir.2007)(noting that pornographic images found on defendant’s computer were submitted to National Center for Missing and Exploited Children, which identified children in 131 images as real children); Rodriguez-Pacheco, 475 F.3d at 437-38 (summarizing testimony of government pediatric expert who testified as to children’s age as well as FBI technological expert who testified as to whether children were real or virtual); United States v. Salcido, 506 F.3d 729, 734-35 (9th Cir.2007)(holding that “[the court] need not decide whether the jury may determine the reality of persons depicted in images based solely on the images themselves” because government presented additional evidence, including testimony of detective who had interviewed one of the children depicted, “from which the jury could conclude that the images depicted actual children”).
II.
In the case presently before us, the only evidence introduced at trial to aid the jury in determining whether the children depicted were virtual or real, apart from the images themselves, was the testimony of Dr. Celeste Wilson, a pediatric physician. Dr. Wilson testified that the anatomical detail in the images was “extraordinary” and consistent with that of real children. The doctor admitted, however, that she had no specialized technological expertise and could not testify as to whether the images could have been digitally created.
The majority reasons that
[w]e cannot reverse a jury verdict on these facts merely because the doctor’s expertise did not extend to distinguishing, as a photography expert, between a virtual image and a real image. A rational jury could on this record find the government had met its burden of proof beyond a reasonable doubt. The anatomical detail testified to by the doctor was extraordinary.
See Op. at 11-12. Dr. Wilson’s testimony, however, is helpful in determining that an image is anatomically consistent with that of a child as opposed to an adult, but is of limited utility to the jury in determining whether the child in question is virtual or real. See Hilton, 386 F.3d at 18-19 (finding medical expert’s testimony that images depicted children rather than adults insufficient to support inference that children depicted were real and not virtual). The Hilton court noted:
someone manufacturing images to look like children will try-and with sufficient technology will manage-to produce images that would be amenable to expert analysis ... Whatever parameters of body proportion, growth and development serve as signs of age ... those parameters will be mimicked by the virtual pornographer-whether by design or as a byproduct of the goal of realism.
Id. at 19. Notwithstanding the fact that the defendant did not produce any evidence himself as to the nature of the images, the burden remains squarely on the shoulders of the government to prove that the children depicted are real.
Unlike the sentencing judge in Rodriguez-Pacheco, we are not tasked here with *16 weighing the preponderance of the evidence to uphold a sentencing enhancement, but the sufficiency of the evidence to uphold a conviction. And the district court in Rodriguez-Pacheco at least had before it the testimony of the FBI technological expert, who provided specific criteria upon which the court could base its conclusion that the child in the disputed image was a real child. Without providing the jury in this case with some sturdier dock to which it can moor its conclusion that the images depicted actual children, it is difficult to see how the government can have proved .this point beyond a reasonable doubt.
III.
Despite the foregoing, I concur in the judgment because I recognize that the rule in this circuit, as it currently stands, enables the factfinder to distinguish, unaided, between real and virtual children. Until the law catches up with technology, we are bound by stare decisis to this rule, and under this rule the government presented sufficient evidence to meet its burden.

. The Irving prosecution was brought on the basis of video files, not still photographs. The Irving court clearly restricted its holding to “cases involving video images or MPEGs,” reasoning that "it does not appear that video technology is so far advanced that a juty is incapable of determining whether a real child was used to make a video.” 452 F.3d at 121-22. This logic certainly does not hold true with respect to photographs, as discussed below. Indeed, it is far from clear that the Second Circuit’s understanding of video images truly reflects the current state of that technology. Movie studios, at least, do possess video technology so far advanced that they can conjure up a realistic replica of practically any image desired. The movie Wag the Dog (New Line Cinema 1997), for example, satirically depicts the extremely convincing fabrication of an entire war out of whole cloth by a conniving Washington spin-doctor seeking to distract the electorate from a Presidential sex scandal. The recent HBO miniseries lohn Adams (HBO Films 2008) featured feats of make-up and other special effects that produced a depiction of 18th century America unparalleled in its authenticity. See HBO Films: John Adams, http://www. hbo.com/films/johnadams (follow “Making John Adams” hyperlink)(last visited Apr. 25, 2008) (describing how visual effects were used to create entirely digitized sets and characters, indistinguishable from the real thing). Whether such technology is readily available to the average child pornographer is a question of fact that a court is not competent to answer on its own.

. See, e.g., CG Society: Society of Digital Artists, http ://forums. cgsociety.org/showthread. php?f=121 & 1=399499 (last visited Apr. 25, 2008). That link, cited by defendant in his brief on appeal, shows a completely digital rendering of a Korean actress. It is not a photograph of the actual actress, but to a layperson might certainly appear to be so.