**UNITED STATES of America, Plaintiff,**

v.

**Alejandro FIGUEROA– LUGO, Defendant.**

**Criminal No. 11–101 (FAB).**

United States District Court, D. Puerto Rico.

Jan. 3, 2013.

Jenifer Yois Hernandez–Vega, United States Attorneys Office, San Juan, PR, for Plaintiff.

Jorge E. Vega–Pacheco, Jorge E. Vega Pacheco Law Office, Rio Piedras, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

On March 17, 2011, a grand jury returned an indictment against defendant Alejandro Figueroa–Lugo ("defendant Figueroa"). (Docket No. 1.) The indictment charged him with one count of knowingly possessing images and movie files containing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). *Id.* The indictment also contains a forfeiture allegation pursuant to 18 U.S.C. § 2253, which seeks forfeiture of any property used or intended to be used in the possession, receipt, distribution, or transportation of child pornography. *Id.*

On July 2, 2012, a jury trial commenced as to the charges against defendant Figueroa. (Docket No. 53.) At the close of the government's case, defendant Figueroa moved for acquittal pursuant to Federal Rule of Criminal Procedure 29[1] ("Rule 29"). (Transcript of Trial on July 5, 2012 ("Day 2") at pp. 175–76). The Court reserved its judgment. At the close of the evidence in the jury trial, defendant Figueroa renewed his motion for judgment of acquittal. The Court again reserved its judgment. (Transcript of Trial on July 6, 2012 ("Day 3") at p. 155.)

On July 10, 2012, a petit jury found defendant Figueroa guilty of knowingly possessing child pornography. (Docket No. 63.) On July 24, 2012, defendant Figueroa again filed a motion for judgment of acquittal pursuant to Rule 29. (Docket No. 67.) On August 30, 2012, the government responded to defendant's motion. (Docket No. 70.)

---

1. Fed.R.Crim.P. 29 states, in pertinent part: "(a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction . . . . (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved. (c) After Jury Verdict or Discharge. (1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later. (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. . . ."

For the reasons discussed below, the Court **DENIES** defendant Figueroa's motion for a judgment of acquittal.

## DISCUSSION

### I. BACKGROUND

The Court will not rehash the entire trial here. Background information or facts will be recounted as needed in the Court's legal analysis of particular issues. *See United States v. Stierhoff,* 549 F.3d 19, 21 (1st Cir.2008). The Court conveys the facts throughout the opinion in the light most favorable to the verdict, *United States v. Rodriguez–Marrero,* 390 F.3d 1, 6 (1st Cir.2004), and decides the motion on the basis of the evidence at the time the ruling was reserved. *See* Fed.R.Crim.P. 29(b).

In January 2010, Special Agent Harold Julsrud ("Agent Julsrud"), a criminal investigator for Immigration and Customs Enforcement Homeland Security Investigations ("ICE HSI") established communications with Lieutenant Glenn Lang ("Lieutenant Lang"), the supervisor of the Maine State Police Computer Crimes Unit ("MSPCCU"), regarding internet protocol ("IP") addresses[2] that were allegedly sharing child pornography in Puerto Rico. (Transcript of Trial on July 3, 2012 ("Day 1") at p. 13; Day 2 at p. 38.) The MSPCCU performs computer crime investigations and computer forensics, which require investigators to analyze pieces of digital evidence and to provide comprehensive reports on the analysis that can be presented in legal proceedings. (Day 1 at pp. 13–15.) Part of Lieutenant Lang's duties also requires him to help authorities in other states or jurisdictions. (*Id.* at p. 14.)

During trial, Lieutenant Lang explained that the vast majority of child pornography cases he handles are peer-to-peer sharing network[3] ("p2p network") cases. (Day 1 at p. 22.) To find offenders for these p2p network cases, he and his investigators use two methods. First, they download the p2p network software and search for contraband like regular p2p network users. *Id.* at pp. 22 & 51. Second, his investigators and he use national databases where thousands of police officers contribute information about possible pieces of child pornography that they see and the particular IP addresses that were used to access the information. *Id.* at 22. The officers also upload files that they believe are child pornography into the database. *Id.* at p. 55.

Using one of these databases, Lieutenant Lang found that one particular IP address, which belonged to defendant Figueroa's home, was listed as a top offender for downloading and sharing child pornography in Puerto Rico. (Day 1 at pp. 28, 30; Day 2 at p. 13.) Lieutenant Lang reviewed one video that was listed in the database as connected to the particular IP address and he confirmed it to be child pornography. (Day 1 at p. 57.) Lieutenant Lang mailed a copy of the video along with the particular IP address and a list of other IP addresses that were suspected of sharing child pornography to Agent Julsrud in Puerto Rico. *Id.* at p. 58.

---

**2.** Lieutenant Lang described an IP address as an "address on the internet that's assigned to [users] by [their] internet service provider." (Day 1 at pp. 27–28.)

**3.** P2P network software, like LimeWire, allows users to set up a directory or a folder on his or her computer and share anything that he or she wants with other users. (Day 1 at p. 31.) The software allows other people around the world using the same software to search for files by typing in phrases that are found in the file names and then downloading the files directly from another user's computer. *Id.* at 31–32.

Agent Julsrud decided that he would investigate the IP address that "had the most instances where investigators had seen child pornography being available for download." (Day 2 at p. 39.) That particular IP address belonged to defendant Figueroa's home. (Day 2 at pp. 13, 41.) Subsequently, Agent Julsrud obtained a search warrant for defendant Figueroa's home. *Id.* at p. 43. The scope of the warrant encompassed any electronic media that could store data. *Id.* at p. 45.

On May 12, 2010, Agent Julsrud and his team executed the search warrant on defendant Figueroa's home and seized about eight or nine computers, eight loose hard drives, other media that included DVDs and CDs, and a number of cell phones. (Day 2 at pp. 45, 75–76.) In total, the team seized twenty-six media devices. *Id.* Special Agent Luis Manuel Colon ("Agent Colon"), a forensic examiner, was part of the evidence collection team that was primarily responsible for the media devices seized; he conducted a forensic examination on the media devices. *Id.* at pp. 52, 74–75.

During his forensic examination of the computer, Agent Colon found that, aside from the default accounts that came with the computer in defendant Figueroa's room, there was only one account on the computer and it was named "Alejandro." *Id.* at p. 89. Agent Colon also found p2p network software known as LimeWire installed on the computer; the software was installed in September 2009 and remained on the computer until May 2010, when it was seized. *Id.* at pp. 89–91. Agent Colon found child pornography on the hard drive [4] of the computer located in defendant Figueroa's room; he did not find child pornography on any other media de-

vice that was seized that day. (Day 2 at pp. 77–78.)

Agent Colon testified that he found eighteen still images and seven videos that "contained minors in lascivious exhibition of the genitalia" saved within folders that were related to LimeWire. *Id.* at p. 92. The images were not deleted from the computer's hard drive; they were accessible to the user. *Id.* at pp. 92, 131. Each of the images had file names that contained phrases that were typical of child pornography descriptions. (Day 1 at pp. 35, 55–56; Day 2 at pp. 94, 98–106, 108.) Agent Colon discovered that some of the images were actually accessed before the hard drive of the computer was seized. *Id.* at pp. 94–107. Agent Colon also testified that pursuant to his investigation, he found that none of the seven videos had been deleted from the computer and that they were accessible to the user. *Id.* at p. 108, 131. Like the images, each of videos had file names that contained phrases that were typical of child pornography descriptions. (Day 1 at pp. 35, 55–56; Day 2 at pp. 109, 110, 116–17, 120, 122.) During trial proceedings, the government showed some of the still images and portions of the videos to Agent Colon, who confirmed that all of the files shown were found on defendant Figueroa's computer. *Id.* at pp. 94–122. Agent Colon also confirmed that several of the images had been accessed and that someone attempted to access at least one of the videos using Windows Explorer on April 17, 2010. *Id.* at p. 130.

## II. Standard

A court may enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed. R.Crim.P. 29(a). The defendant may move the court for a judgment of acquittal after

---

**4.** Agent Colon stated that a hard drive is "an electronic device contained inside a computer that actually stores the data within the computer." (Day 2 at p. 79.)

the close of the government's case or at the close of all of the evidence. *Id.* A court may reserve its decision on the motion, submit the case to the jury, and decide upon the motion before or after the jury returns a verdict of guilty. Fed. R.Crim.P.29(b). A defendant may move for a judgment of acquittal within fourteen days after a guilty verdict or after the discharge of the jury, whichever is later. Defendant Figueroa has timely filed his motion for judgment of acquittal.

In reviewing a motion for judgment of acquittal, a district court must consider the evidence, both direct and circumstantial, "in the light most favorable to the prosecution" to determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt." *United States v. Lara,* 181 F.3d 183, 200 (1st Cir.1999) (internal citations omitted). This standard requires the resolution of all evidentiary disputes and credibility questions—both direct and circumstantial—in favor of the government; the Court must also draw all reasonable inferences in favor of the government's case. *United States v. Savarese,* 686 F.3d 1, 8 (1st Cir.2012). Thus, the jury's verdict stands unless the evidence "is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt." *United States v. Rodriguez–Velez,* 597 F.3d 32, 39 (1st Cir.2010) (internal citation omitted); *see also United States v. Soler,* 275 F.3d 146, 150 (1st Cir.2002) (citing *Lara,* 181 F.3d at 200) (the verdict stands unless the evidence could not have persuaded a rational trier of fact of the defendant's guilt beyond a reasonable doubt). The Court assesses only the admissible evidence at trial in applying the sufficiency

standard. *United States v. Aviles–Colon,* 536 F.3d 1, 13–14 (1st Cir.2008)

## III. Defendant Figueroa's Motion for a Judgment of Acquittal

Defendant Figueroa alleges the following: (1) the government failed to prove that he knowingly possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B); (2) the government failed to prove that some of these images are of actual children. The Court considers both arguments and addresses each argument in turn.

### A. Knowing Possession of Child Pornography

Defendant Figueroa was convicted of violating 18 U.S.C. § 2252(a)(4)(B), which makes it an offense for any person who "knowingly possesses, or knowingly accesses with intent to view, one or more books ... films ... or other matter which contain any visual depiction that has been shipped or transported using any means or facility of interstate or foreign commerce ... by any means including by computer, if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct." Defendant Figueroa makes two arguments as to why the government failed to prove that he knowingly possessed child pornography. First, he argues that the government failed to prove that he knew there was child pornography on his computer. (Docket No. 67 at p. 6.) Furthermore, he argues that the government failed to prove that defendant Figueroa was the sole possessor of the child pornography because other members of his family could have accessed his computer. *Id.* at p. 12. The Court disagrees with defendant Figueroa's arguments.

■ "To be found guilty of knowing possession, an individual need only have known that there was child pornography on his computer yet declined to delete it." *United States v. Pires*, 642 F.3d 1, 13 (1st Cir.2011) (citing *United States v. Carani*, 492 F.3d 867, 875 (7th Cir.2007)). The defendant "need not know the material's character at the moment that he downloads it, as long as he thereafter learns its character and nevertheless retains it." *Id.* To prove knowing possession, it is sufficient for the government to show that a defendant was aware that his computer files contain pornography. *Pires*, 642 F.3d at 13 (citing *United States v. Hilton*, 257 F.3d 50, 54 (1st Cir.2001)). Furthermore, "a showing of scienter[5] ... can (and often will) be made through circumstantial evidence." *Pires*, 642 F.3d at 8–9 (citing *United States v. Hussein*, 351 F.3d 9, 20 (1st Cir.2003)). After reviewing the record, the Court finds that the evidence was sufficient to allow a reasonable jury to conclude defendant Figueroa knowingly possessed child pornography files on his computer.

First, investigators found child pornography files only on the hard drive of the desktop computer in defendant Figueroa's room but not in the other twenty-five items of electronic media that were seized. (Day 2 at p. 83.) Next, aside from the default accounts that were created by the Windows software when it was installed, there was only one user account created; the title of the account was "Alejandro," which is defendant Figueroa's first name. *Id.* at p. 89. Furthermore, the eighteen still images were found in a folder named "Saved" within LimeWire,[6] which is p2p network software that requires users to request the downloading of files specifically and to specify where the files must be saved. (Day 1 at p. 33; Day 2 at pp. 92–94, 98–108, 158.) The file names of the images and videos contained phrases that are typical of those used to name child pornography files. (Day 1 at pp. 33, 55–56; Day 2 at pp. 94, 98–106, 108–10, 116–17, 120, 122.) For example, the file names contained phrases such as "9yo Jenny nude," "kiddie," "kiddy," "child porn," "sex," "underage-girls," "12 yr old," "pre-teen," "7–year–old," "8yr," and "6yr old." *Id.*

Additionally, the government presented evidence about other activity that occurred on the computer when the images and videos were created. For example, Agent Colon's investigation of the hard drive and

---

**5.** In *Pires*, the First Circuit Court of Appeals discussed knowing receipt of child pornography, not knowing possession. As the defendant Figueroa admits, *see* Docket No. 67 at p. 7, n. 1, the element of knowledge or scienter is the same in both contexts. *See e.g., Pires* 642 F.3d at 8–9 (citing *United States v. Hussein*, 351 F.3d 9, 20 (1st Cir.2003)) (discussing knowing receipt of child pornography and citing *Hussein*, which deals with knowing possession and trafficking of a controlled illegal substance); *see also United States v. Ehle*, 640 F.3d 689, 695 (6th Cir.2011) (explaining how " 'receiving' child pornography necessarily requires one to 'possess' that child pornography").

**6.** Unlike the still images, the videos were not located in the "Saved" folder within Lime-

Wire. Agent Colon testified that these videos were still in the process of downloading and were stored in a folder linked to LimeWire and titled "Incomplete." (Day 2 at p. 157.) Agent Colon also testified that if the files were previewed using LimeWire before the downloading completed, the word "preview" would appear in the file. None of the seven files, however, had the word "preview" associated with it. Agent Colon indicated that it is possible that none of these files were previewed using LimeWire before they were completely downloaded onto the hard drive. Agent Colon has also indicated, however, that the videos can be opened via other means, such as with Windows Explorer. *Id.* at p. 130.

computer revealed that on March 24, 2010, one of the videos containing child pornography was created. (Day 2 at p. 126.) Seven minutes after the video was created, a chat was logged between two e-mail accounts; one of the e-mail accounts belonged to defendant Figueroa. *Id.* Agent Colon's investigation also showed that at least five of the still images and at least two of the videos were created on April 14, 2010 between the hours of 3:59 a.m. and 4:20 a.m. *Id.* at pp. 98, 101, 103, 106, 108, 110. On this date, at 4:27 a.m., a cookie[7] containing the address "alejandro@live. com" was created, indicating that this particular account was being used only a few minutes after the files were created. *Id.* at p. 127. This activity suggests that, contrary to defendant Figueroa's contentions that other individuals could have used his computer, defendant Figueroa was using the computer when the files were created.

The government also presented evidence that some of the files were accessed. At least three of the images and one of the videos had been accessed. (Day 2 at pp. 98, 99, 119.) Agent Colon also testified that a "thumbs.db" file was created for one of the videos containing child pornography. (Day 2 at p. 130.) The "thumbs.db" files, he testified, are created only when a user attempts to view an image or a video using Windows Explorer; Windows Explorer creates those files so that the system "remembers" what the image or video looks like so that it will not have to search for the file again. *Id.* at pp. 129–30. Therefore, Agent Colon concluded that the user accessed the file using Windows Explorer.

Defendant Figueroa argues that this evidence is insufficient for a reasonable juror to rationally conclude that he knowingly possessed child pornography. He primarily relies on *United States v. Dobbs,* 629 F.3d 1199 (10th Cir.2011), for his argument. The government responds that *Dobbs* "is not illustrative ... but rather distinguishable." (Docket No. 70 at p. 8.) The Court agrees with the government; defendant Figueroas's reliance on *Dobbs* is misplaced.

In *Dobbs,* the defendant was charged with knowing receipt of two child pornography images that were found exclusively in the computer's cache. 629 F.3d at 1201. A cache automatically downloads the images on a web page regardless of whether they are displayed on a computer's monitor. *Id.* Therefore, a user does not necessarily see the images that are captured by the caching function. *Id.* In reaching its conclusion to vacate the guilty verdict, the *Dobbs* Court focused on the fact that the government presented no evidence that the defendant even knew about his computer's automatic-caching function. *Id.* at 1204. The government's forensic specialist "repeatedly admitted that there was no evidence that [the defendant] had accessed his computer's cache, or that he even knew it existed." *Id.* at 1202.

In contrast, the images and videos in this case were not found via a caching function that was unknown to defendant Figueroa. Rather, the files were found stored in the hard drive of defendant Figueroa's personal computer in folders related to software that requires a user specifically to request for items to be downloaded. Defendant Figueroa admit-

---

7. Agent Colon indicated that a cookie "is a small text file that the internet browser saves" in a user's computer so that when a user comes back, the computer knows what web page the individual visited so the internet browser does not have to search again to find the location. (Day 2 at p. 127.) The cookie saves certain information about the account or file that is being used at the time.

ted that he installed Limewire, knew how to use it, and searched for files using the software multiple times. (Day 3 at pp. 107, 117, 123.) The government has shown that some of the files were downloaded around the time that defendant Figueroa was using the computer. For example, the government has presented evidence that within minutes of creating the files, an online chat was logged using defendant Figueroa's e-mail account. Moreover, unlike the government in *Dobbs*, which presented no evidence that the files on Dobb's cache were accessed or viewed, the government in this case did present evidence that the files were accessed. Specifically, the government discussed dates when files were last accessed and provided a specific example of when one video was opened using Windows Explorer.

The standard here is whether a reasonable jury, on this record, could have rationally concluded that defendant Figueroa knew "that his own computer contained such files." *See United States v. Salva-Morales*, 660 F.3d 72, 75 (1st Cir.2011). The Court finds that based on all of the evidence presented, a reasonable jury could rationally conclude that defendant Figueroa knew that his computer contained images and videos that depicted child pornography, and, therefore, that he knowingly possessed child pornography. Thus, the Court **DENIES** defendant Figueroa's motion for a judgment of acquittal on the ground that the government failed to prove that he knowingly possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

### B. Depictions of Actual Children

■ Defendant Figueroa argues that the United States failed to prove that the images contain real-life minors engaged in sexually explicit conduct. (Docket No. 67 at p. 9.) He argues that the government only showed the images to the jury but presented no evidence that the images were of real, live minors. Id. at p. 10. Furthermore, he argues that some of the images do not contain any faces. (Day 2 at p. 176.) The Court finds defendant Figueroa's arguments unavailing.

The First Circuit Court of Appeals has held that the government is not required to prove via expert testimony that the images contain real children. *United States v. Rodriguez–Pacheco*, 475 F.3d 434, 439 (1st Cir.2007); *see also United States v. Hoey*, 508 F.3d 687, 691 (2007) ("There is no per se rule that the prosecution is required to produce expert testimony in every case to establish that the depicted child is real, for either guilt or sentencing purposes.") In adopting the reasoning of the Supreme Court and other circuit courts, the *Rodriguez–Pacheco* court indicated that "juries are capable of distinguishing between real and virtual images, without expert assistance." *Rodriguez–Pacheco*, 475 F.3d at 439. The First Circuit Court of Appeals has also held that it is the jury's job to "determine whether the images ... constitute visual depictions of 'sexually explicit conduct.'" *United States v. Wilder*, 526 F.3d 1, 12 (1st Cir. 2008) (internal citations omitted).

The Court finds that the images and the videos introduced into evidence were sufficient for the jury to reach the conclusion that the files depicted real minors engaging in sexually explicit conduct. Fourteen of the images show a young female child with her legs spread apart. One of the images reveals a young child that is naked, with her arms and legs bound. Similar to the images found in *Wilder*, the "focal point" of many of the images is the "child's genital area." *Id.* at 12. In seventeen of the images found in this case, like the images in *Wilder*, the young child is either

completely naked or "largely unclothed." *Id.* at 12. Also similar to the images in *Wilder*, sixteen of the images show a young child that "is posed in a way that suggests a willingness to engage in sexual activity." In some of the photos, the young child is posed in front of a backdrop. In one photo, she is sitting on a wooden floor in front of a closet. These are not photos that can be mistaken for cartoons or drawings. The evidence is certainly not "so scant that a rational factfinder could not conclude" that the photos contained real minors. *Rodriguez–Velez,* 597 F.3d at 39. Therefore, a reasonable jury could have rationally found that individuals in the photos were real, live minors engaging in sexually explicit conduct. Thus, the Court also **DENIES** defendant Figueroa's motion for a judgment of acquittal on the ground that the government failed to prove that some of these images are of actual children.

## CONCLUSION

For the reasons expressed above, the Court **DENIES** defendant Figueroa's motion for a judgment of acquittal.

**IT IS SO ORDERED.**