Carroll
No. 2008-019

THE STATE OF NEW HAMPSHIRE V. PETER CLARK

Argued: September 17, 2008
Opinion Issued: October 30, 2008

*Kelly A. Ayotte,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Nelson, Kinder, Mosseau & Saturley, P.C.,* of Manchester (*John C. Kissinger, Jr.* and *Michael J. Murphy* on the brief, and *Mr. Kissinger* orally), for the defendant.

GALWAY, J. The defendant, Peter Clark, appeals his convictions for possession of child pornography, *see* RSA 649-A:3 (2007), following a bench trial in Superior Court (*O'Neill,* J.) We affirm.

The following facts are supported by the record. In 2002 and 2003, the defendant became the subject of an investigation involving his internet communications with Detective James McLaughlin of the Keene Police Department, whom the defendant believed to be a fourteen-year-old boy. The defendant and Detective McLaughlin, as the fictitious child, communicated regularly via internet "chats," or instant, real time, messaging. These conversations were of a graphic sexual nature. The defendant was arrested during his attempt to meet the fictitious child.

Following his arrest, police executed a search warrant at the defendant's residence, seizing his computer. Special Agent Andrew Murphy, a computer forensic specialist for the United States Secret Service, subsequently conducted a forensic examination of the computer, which exposed the ten images that are the basis for the underlying indictments.

At trial, the State moved to allow the fact finder to determine whether the images depicted real children under the age of sixteen based solely upon those images. The defendant objected. The trial court ruled that, "the State is not required, as a matter of law, to present any additional evidence or expert testimony beyond the images themselves to meet its burden of proof." It noted, however, that the State had provided additional competent expert evidence; namely, the testimony of Agent Murphy. The trial court concluded that "the subject images in this matter are beyond a reasonable

doubt, of real children under the age of 16," and found the defendant guilty of ten counts of possession of child pornography.

On appeal, the defendant argues that the State presented insufficient evidence that: (1) the images were of real minor children; and (2) that he knowingly possessed child pornography. We address each argument in turn.

In order to prevail upon his challenges to the sufficiency of the evidence, the defendant must prove that "no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. MacDonald*, 156 N.H. 803, 804 (2008).

The defendant argues that the images in this case, standing alone, were insufficient to prove that actual children were depicted. He asserts that, "[g]iven the current state of technology, ordinary people have difficulty in differentiating between virtual and real images," necessitating evidence beyond the images themselves. He further contends that the images in this case, as introduced as exhibits at trial, were "strikingly small, approximately two inches by three inches in size," "somewhat grainy and unclear," and consisting of "grids of individually colored pixels," making it impossible to conclude beyond a reasonable doubt that real children were depicted. We disagree.

In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), the United States Supreme Court declared unconstitutional as overbroad section 2256(8)(B) of the Child Pornography Prevention Act of 1996, *see* 18 U.S.C. §§ 2251 *et seq.*, which prohibited any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct." *Id.* at 241 (quotation omitted). This "section capture[d] a range of depictions, sometimes called 'virtual child pornography,' which include computer-generated images . . . ." *Id.* The Court reasoned, in part, that it is the method of producing the child pornography, that is, the abuse of real children, which provides the State with its interest in "stamping it out without regard to any judgment about its content." *Id.* at 249. The Court recognized that the statutory provision at issue prohibits speech that "records no crime and creates no victims by its production." *Id.* at 250.

Consistent with *Ashcroft*, we have stated that child pornography must depict an actual child in order for its possession to fall outside the protections of the New Hampshire Constitution and within the confines of prohibited conduct under RSA 649-A:3. *State v. Zidel*, 156 N.H. 684, 693-94 (2008) (plurality opinion). This is so because the purpose of RSA 649-A:3 is to prevent harm to children resulting from their "use as subjects in sexual performances." *Zidel*, 156 N.H. at 693 (quotation omitted) (plurality

opinion); RSA 649-A:1 (2007). However, we have never had occasion to address whether additional evidence, beyond the images, is necessary to prove the depiction of a real child. Thus, we look to other jurisdictions for guidance. *See State v. O'Maley*, 156 N.H. 125, 134 (2007), *petition for cert. filed*, (U.S. Nov. 7, 2007) (No. 07-7577).

In *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 438 (1st Cir. 2007), the United States Court of Appeals for the First Circuit determined that the government was not required to present expert testimony in order to prove that a pornographic image depicted a real child. In that case, the defendant pled guilty to possession of at least one image constituting child pornography, and the government sought a sentence enhancement based upon the defendant's possession of more than ten such images. *Id.* at 436. The government presented expert evidence that nine of the images depicted a real child, but failed to ask the expert's opinion as to the remaining images. *Id.* The defendant argued that the government was required to present expert testimony as to each of the ten images as a matter of law under *Ashcroft*. *Id.* at 438. The district court disagreed, and concluded upon its own review that the image omitted from the expert's opinion depicted a real child, and imposed the sentence enhancement. *Id.* The First Circuit agreed.

Although the case was decided under a lesser burden of proof in the context of a sentence enhancement, the First Circuit's reasoning is helpful to our analysis here. *Cf. United States v. Wilder*, 526 F.3d 1, 11 (1st Cir. 2008), *petition for cert. filed*, (U.S. Aug. 11, 2008) (No. 08-5831) (citing *Rodriguez-Pacheco* for proposition that government need not provide expert testimony to prove beyond a reasonable doubt real child was depicted). The court first observed that, in *United States v. Nolan*, 818 F.2d 1015 (1st Cir. 1987), it had previously "rejected a per se rule that the government must produce expert testimony in addition to the images themselves, in order to prove beyond a reasonable doubt that the images depicted are of real children." *Rodriguez-Pacheco*, 475 F.3d at 439. It noted that *Ashcroft* did not "lay down the absolute requirement that, absent direct evidence of identity, expert testimony is required to prove that the prohibited images are of real, not virtual, children," and recognized that other circuits that have addressed this issue "universally accept the proposition that juries are capable of distinguishing between real and virtual images, without expert assistance." *Id.* at 441 (quotation omitted).

Reaffirming its conclusion in *Nolan*, the First Circuit stated, "Whatever improvements may eventually be made in technology, the Supreme Court's observation about the market for child pornography is still correct. There

is no basis to assume that the producers of child pornography have widely converted to exclusive use of virtual pornography." *Id.* at 443. The court further concluded:

> The burden of proof remains on the government to prove the pornographic image is of a real child.
>
> . . . .
>
> There is nothing inconsistent between the government's having that burden and *Nolan's* statement that the defendant, while under no obligation to do so, was free to have presented evidence of his own suggesting that the picture used other than real subjects. He could have called an expert to testify as to how photographs like this one could have been made without using real children. If defendant had chosen to mount a defense of this type and presented such expert testimony, and had the government not called an expert to explain why the image was real, the government ran the risk of not persuading the trier of fact. This does not shift the burden of proof.

*Id.* at 444 (quotation, citation, and brackets omitted).

The United States Court of Appeals for the Tenth Circuit also holds that expert testimony is not required for purposes of establishing the depiction of a real child, observing: "We conclude that [*Ashcroft*], did not establish a broad, categorical requirement that, in every case on the subject, absent direct evidence of identity, an expert must testify that the unlawful image is of a real child. Juries are still capable of distinguishing between real and virtual images . . . ." *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir.), *cert. denied*, 540 U.S. 1083 (2003). Likewise, the Supreme Court of Illinois declared, relying upon *Ashcroft*: "[I]n this case we find little or no reason to fear that realistic virtual child pornography exists and was so readily available as to create an unacceptable risk that the trial judge, unaided by expert testimony, mistook legal computer-generated images for illegal child pornography." *People v. Phillips*, 831 N.E.2d 574, 585 (Ill. 2005). Indeed, the majority of courts that have addressed this issue have ruled in a similar fashion. *See, e.g., State v. Alinas*, 171 P.3d 1046, 1051 (Utah 2007) ("[E]very federal circuit court to address the issue has held that a state may prove that images of children are real, as opposed to virtual, merely by allowing the fact finder to examine the images themselves. We are of the same view." (footnote omitted)); *State v. Huffman*, 847 N.E.2d 58, 69 (Ohio Ct. App. 2006), *aff'd in part and appeal dismissed in part*, 872 N.E.2d 1213 (Ohio 2007) (state is not required to present any additional evidence to demon-

strate images depict real children); *McIntyre v. State*, 897 A.2d 296, 310-11 (Md. Ct. Spec. App. 2006) (expert evidence is not required to prove a real child is depicted).

The defendant argues that we should accept the minority view espoused by the dissent in *Rodriguez-Pacheco*, 475 F.3d at 446 (Torruella, J., dissenting), and *United States v. Frabizio*, 445 F. Supp. 2d 152 (D. Mass.), *clarified*, 463 F. Supp. 2d 111 (D. Mass. 2006). In his dissent, Judge Torruella asserted that "virtual and real child pornography images are indistinguishable, and that even experts have difficulty determining what is real and what is virtual," necessitating an expert to prove the depiction of a real child. *Rodriguez-Pacheco*, 475 F.3d at 460 (Torruella, J., dissenting). Similarly, in *Frabizio*, the court excluded expert testimony on the issue of the depiction of a real child after concluding "the government ha[d] not made the threshold showing that a visual observer can reliably evaluate the relevant pictures for signs of manipulation and computer-generation." *Frabizio*, 445 F. Supp. 2d at 158. We do not agree with this view. As the United States Supreme Court observed, "If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." *Ashcroft*, 535 U.S. at 254. There is no indication that the market for child pornography has thus evolved. *See Rodriguez-Pacheco*, 475 F.3d at 443 ("There is no basis to assume that the producers of child pornography have widely converted to exclusive use of virtual pornography."); *Phillips*, 831 N.E.2d at 586 (if a legal substitute for child pornography sufficed, there would be a dramatic change in the market, which would "surely not go unnoticed").

██ We find the majority view persuasive, and similarly conclude that the State is not required to present evidence beyond the images themselves to establish that a real child is depicted. That is not to say that there are no circumstances under which the trial court may find expert testimony helpful. However, the admission or exclusion of expert testimony is within the trial court's sound discretion. *See Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 806 (1996). In this case, the trial court could reasonably have concluded that each image depicted a real child without the aid of expert testimony. Indeed, contrary to the defendant's assertion, the exhibits admitted at trial were not of such inferior quality or insufficient size as to make this determination impossible. Furthermore, as the trial court noted in its decision, although not required to do so, the State did present expert

testimony in this regard. Given the evidence before the trial court, we cannot conclude that no rational trier of fact could find the images depicted real children.

The defendant next argues that the State failed to prove that he knowingly possessed the pornographic images because all of the images were located in either deleted files or in unallocated hard drive space. With respect to nine of the ten images, the defendant contends, based upon Agent Murphy's testimony, that it is reasonable to conclude that these images were the result of unsolicited "pop-ups" that he immediately deleted, and, thus, that he did not knowingly possess them. With respect to the one image that was neither in a temporary internet file nor unallocated space, the defendant contends that it was deleted, and, thus, there was no evidence that he possessed it on the date alleged in the indictment.

We begin with a brief review of the evidence and Agent Murphy's testimony. At trial, the images were admitted as exhibits five through fourteen. Agent Murphy testified that exhibits five through nine were found in allocated space on the defendant's hard drive, while the remainder were found in unallocated space. He explained that allocated space contains files which would be immediately accessible to the user, such as word documents, while unallocated space is the "residual part of [the] hard drive where data is often pushed off to when it's deleted or it's an overflow area for things like the Temporary Internet Files." He further explained that a temporary internet file is a file that has been downloaded to the computer upon being viewed on a Web page, making a return to that Web page much faster in the future. According to Agent Murphy, one image, exhibit five, was found in allocated space on the defendant's hard drive, and was not a temporary internet file. Exhibits six through nine were temporary internet files and were also located in allocated space. For these exhibits, Agent Murphy was able to testify as to the date the file was created, when it was last accessed, and that each file had been deleted. Exhibits ten through fourteen were found in unallocated space, which prevented Agent Murphy from determining details such as when they were created or last accessed.

The defendant asserts that, based upon the location of exhibits six through fourteen, "it is reasonable to conclude that [he] had attempted to permanently delete the images and he did not knowingly possess or have those images under his control." Relying upon Agent Murphy's testimony, he argues that because exhibits six through fourteen were either deleted temporary internet files or in unallocated space, the presence of each image could have been the result of an unsolicited and unwanted "pop-up," which he believed he had permanently deleted, and, thus, did not knowingly possess. The defendant maintains: "Simply because a computer forensic expert was able to find these images in remote and inaccessible parts of the

computer does not render them under [his] knowing possession or control." Given the evidence in this case, we disagree.

■ There is a split among courts as to whether the automatic record created of images merely viewed on a computer, irrespective of any prompting by the user, constitutes possession of those images. *See State v. Jensen*, 173 P.3d 1046, 1050-51 (Ariz. Ct. App. 2008) (discussing division in authority on this issue). We acknowledge that reliance upon such a record is problematic because, as Agent Murphy testified, the images contained in temporary internet files or unallocated space may not always be the result of the computer user seeking out or downloading the image. The relevant inquiry thus becomes whether the defendant knowingly possessed the images, in that he exerted some control over them, *see State v. Crie*, 154 N.H. 403, 406 (2006), or whether the presence of the images on his computer was merely inadvertent. This inquiry is a question of fact. *See State v. Mobley*, 118 P.3d 413, 416 (Wash. Ct. App. 2005), *rev. denied*, 136 P.3d 758 (Wash. 2006) (inadvertent viewing questions are left to the fact finder).

Thus, we turn to the evidence in this case. In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. *Crie*, 154 N.H. at 406. Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt. *Id.* Further, the trier of fact may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom. *Id.*

■ We hold that there was sufficient evidence for the trial court to find, beyond a reasonable doubt, that the defendant knowingly possessed the images constituting exhibits six through fourteen. Perhaps most damaging to the claim that the images were a result of unwanted "pop-ups" were the defendant's own statements to Detective McLaughlin that he possessed child pornography. Specifically, Detective McLaughlin testified that the defendant communicated with the fictitious child about sending images constituting child pornography, but that he was afraid to send them for fear of being detected. The defendant also indicated he would bring a CD containing child pornography with him when he and the fictitious child met. Further evidence supporting the defendant's knowing possession of exhibits six through fourteen was his possession of additional child pornography, specifically, exhibit five, which was saved to the defendant's hard drive. *See United States v. Hay*, 231 F.3d 630, 633-34 (9th Cir. 2000), *cert. denied*, 534 U.S. 858 (2001) (magistrate may consider evidence of defendant's "extreme interest in young children" in concluding that transfer of child pornography was not accidental or unsolicited); *Ward v. State*, 994 So. 2d 293, 301 (Ala.

Crim. App. 2007) (considering presence of additional child pornography on computer in determining knowing possession of images discovered in temporary internet files). There was also evidence presented at trial of additional images of child pornography found on the defendant's computer. Given this evidence, we cannot conclude that no rational trier of fact could find knowing possession beyond a reasonable doubt.

 With respect to exhibit five, the defendant argues that there is no evidence he possessed the image on the date charged in the indictment. Specifically, the defendant contends that the deleted image was last viewed on May 5, 2003, and, thus, he did not possess the image on August 9, 2003, as alleged in the indictment. However, under RSA 649-A:3, time is not an element of the crime. Therefore, any discrepancy as to the date of possession is not fatal to the State's case, as long as possession could be found on or about the date alleged in the indictment. *See State v. DeCosta*, 146 N.H. 405, 412 (2001); *State v. Perkins*, 70 N.H. 330, 331-32 (1900) (State must prove crime occurred before indictment was returned and within statute of limitations). Here, the defendant does not dispute that this image was last viewed on May 5, 2003, prior to the indictment date and within the statute of limitations. This, combined with the other evidence presented at trial, supports the trial court's finding that the defendant knowingly possessed exhibit five.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.