NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
Case No. 2023-0258
Citation: State v. Higgins, 2024 N.H. 24


THE STATE OF NEW HAMPSHIRE

v.

ROLAND HIGGINS

Argued: February 13, 2024
Opinion Issued: May 14, 2024


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.


Desmeules Olmstead & Ostler, of Norwich, Vermont (Cabot Teachout on the brief and orally), for the defendant.


DONOVAN, J.

[¶1] The defendant, Roland Higgins, appeals his convictions, following a bench trial in the Superior Court (MacLeod, J.), on sixteen counts of possession and six counts of distribution of child sexual abuse images.  See RSA 649-A:3, I(a) (2016); RSA 649-A:3-a, I(a) (2016).  The defendant argues

that the trial court erred in finding the evidence sufficient to prove that he knowingly possessed and distributed the files specified in the indictments. We conclude that there was sufficient evidence to support the defendant's convictions beyond a reasonable doubt. Accordingly, we affirm.

## I. Facts

[¶2] The trial court could have found, or the record otherwise establishes, the following facts. Beginning in July 2017, Lieutenant James from the Grafton County Sheriff's Office used investigative software to download child sexual abuse images from a BitTorrent account on an internet protocol (IP) address associated with the defendant's residence. In November 2017, after downloading "multiple images of child sexual abuse and child erotica over multiple dates," James identified the defendant as the subscriber of the IP address. James continued to observe both child erotica and child sexual abuse images downloaded from the defendant's IP address from December 2017 to February 2018.

[¶3] In March 2018, law enforcement executed a search warrant at the defendant's residence, where they seized approximately sixty devices including computers, memory cards, flash drives, and hard drives. During the execution of the search warrant, law enforcement contacted the defendant at his workplace and interviewed him at a nearby police station.

[¶4] During the interview, the defendant stated that he is "a little bit of a risk-taker" but denied having an interest in child pornography. The defendant explained that he was interested in images of teenage models and described his interests as "paraphilia," which he defined as an attraction to "the beauty the loveliness the purity," but he claimed that he "never went into pedophilia." The defendant admitted that he had viewed child pornography in the past both on the internet and by using a BitTorrent file-sharing network. Nonetheless, the defendant claimed that he deleted any illicit and unwanted images from his computers. The defendant discussed his use of BitTorrent and conveyed his understanding that BitTorrent was a peer-to-peer file-sharing network that takes pieces of files from various users' computers and reassembles those pieces into a complete download. However, he denied sharing files from his computer through BitTorrent and claimed he was unaware that he could do so. The defendant maintained that, if he had inadvertently viewed and downloaded child pornography in the past, he did so unintentionally, and he denied that law enforcement would find child pornography on his computers.

[¶5] During the subsequent forensic examination of the devices seized from the defendant's residence, investigators determined that the defendant's devices collectively contained approximately twenty-four terabytes of memory and that the devices could store "potentially millions of photographs per terabyte." Investigators identified "several hundred" torrent files on the

defendant's devices with names consistent with child sexual abuse images. Investigators also found files on the defendant's computers with file names such as "12-year-old" or "15-year-old," and a "series" of images from a foreign electronic magazine featuring "child erotica." Based on automated and manual reviews of the files found on the defendant's devices, law enforcement confirmed that a number of files constituted child sexual abuse images.

[¶6] In November 2018, a grand jury indicted the defendant on sixteen counts of possession and six counts of distribution of child sexual abuse images. The possession charges were based on sixteen files containing child sexual abuse images found on one of the defendant's computers. The distribution charges were based on six images law enforcement downloaded from the defendant's computers using investigative software from July 2017 to January 2018.

[¶7] At the two-day bench trial in August 2022, the State presented expert witness testimony to explain BitTorrent and the investigative software used in this case. The expert testified that BitTorrent is a file-sharing network through which users can download files from other BitTorrent users and then become a source for those same files.[1] He explained that, for file-sharing networks such as BitTorrent to function, users not only download files, but they share those files with other users in order to facilitate faster download speeds.

[¶8] The expert witness summarized the steps BitTorrent users follow to obtain content through the network. According to the expert, after downloading a peer-to-peer file-sharing program such as BitTorrent, a user must obtain a torrent file, which is generally accomplished by using keywords to search "indexing sites" on the internet. A torrent file, rather than containing content itself, acts as an "instruction set" that defines the content to be downloaded through BitTorrent. Once the user has found a torrent file with a description that matches the user's search criteria, the user downloads the torrent file and loads it into BitTorrent. After the user loads the torrent file into BitTorrent, BitTorrent obtains the pieces of that torrent file and the files it references from other BitTorrent users to assemble a complete download. The expert also explained that any given torrent file could reference thousands of files and that, "[b]y downloading a single torrent, a user could potentially download any number of different files, and they could be any mix of type, whether it be an image file, a video file, textual documents, and so on."

---

[1] Numerous federal circuit courts of appeals have discussed BitTorrent and other similar peer-to-peer, file-sharing networks. For further discussion of BitTorrent, see generally United States v. Clarke, 979 F.3d 82 (2d Cir. 2020); United States v. Fletcher, 946 F.3d 402 (8th Cir. 2019); United States v. Dillingham, 320 F. Supp. 3d 809 (E.D. Va. 2018).

[¶9] The State also called James to testify at trial. He testified about investigative software logs documenting files he downloaded from the defendant's computer. James explained that the logs documented his connections to the defendant's computer, the torrent file "info hash" (a torrent file's digital fingerprint), the defendant's IP address, and how many files are associated with any particular download. He then testified about the download time, associated IP address, torrent info hash, number of torrent file pieces, and number of files associated with each torrent relating to each of the six distribution charges.

[¶10] At the close of the State's case, the defendant moved to dismiss all twenty-two charges, arguing that the State presented insufficient evidence to prove, beyond a reasonable doubt, that he knowingly possessed or distributed child sexual abuse images. In September 2022, the court denied the defendant's motion and found the defendant guilty on all sixteen counts of possession and six counts of distribution of child sexual abuse images. The defendant moved to set aside the verdicts and dismiss all charges. In November 2022, the court denied his motion, and this appeal followed.

II. Analysis

[¶11] On appeal, the defendant argues that the trial court erred in finding the evidence sufficient to establish that he knowingly possessed and distributed the child sexual abuse images specified in the indictments. He maintains that he inadvertently downloaded and subsequently shared the specified files without knowing their content or presence on his computer.

[¶12] When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Saintil-Brown, 172 N.H. 110, 117 (2019). The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn therefrom. Id. We examine each evidentiary item in the context of all the evidence, and not in isolation. Id. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id.

[¶13] When the evidence as to one or more elements of the charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. Id. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. Id.

4

[¶14] By contrast, when the proof involves both direct and circumstantial evidence, a sufficiency challenge must fail if the evidence, including the fact finder's credibility determinations, is such that a rational trier of fact could find guilt beyond a reasonable doubt, even if the evidence would support a rational conclusion other than guilt had the fact finder resolved credibility issues differently. Id. at 117-18. Regardless of whether the evidence is solely circumstantial or involves both direct and circumstantial evidence, we consider it in the light most favorable to the State, and we examine each evidentiary item in the context of all of the evidence, not in isolation. Id. at 118.

A. Possession Charges

[¶15] We first address the defendant's challenge to the sufficiency of the evidence relating to the sixteen possession charges. RSA 649-A:3, I(a) states that "[n]o person shall knowingly . . . [b]uy, procure, possess, or control any visual representation of a child engaging in sexually explicit conduct." Further, "[a] person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist." RSA 626:2, II(b) (2016). Therefore, to convict the defendant of knowing possession of child pornography, the State had to prove beyond a reasonable doubt that the defendant "possess[ed] or control[led] a visual representation of a child engaging in sexually explicit conduct," specifically, the images described in each indictment, and that he acted knowingly. See RSA 649-A:3, I(a). At trial, the parties stipulated that the files identified in the indictments constitute child sexual abuse images under RSA chapter 649-A and that, at all times relevant, the IP address specified in the indictments was assigned to the defendant. Thus, the only remaining issue that we need to determine is whether the State proved beyond a reasonable doubt that the defendant possessed the charged images knowingly.

[¶16] As a preliminary matter, the defendant asserts that the trial court erred in refusing to apply the test for knowing possession set forth in State v. Fossett, 119 N.H. 155 (1979). In Fossett, we considered whether the State had introduced sufficient evidence to convict the defendant under RSA 318-B:26 (Supp. 1977) of possessing a controlled drug. Fossett, 119 N.H. at 156. We stated that RSA 318-B:26 required the State to prove beyond a reasonable doubt that: (1) the defendant had knowledge of the nature of the drug; (2) he had knowledge of its presence in his vicinity; and (3) he had custody of the drug and exercised dominion and control over it. Id. (quotation omitted).

[¶17] In its order, the trial court relied upon State v. Clark, 158 N.H. 13 (2008), to define the element of knowing possession. In Clark, the defendant communicated with a detective whom he believed to be a fourteen-year-old juvenile via the internet, and the defendant was subsequently arrested during his attempt to meet the fictitious juvenile. Clark, 158 N.H. at 14. Following his arrest, law enforcement conducted a forensic examination of Clark's computer,

5

which revealed ten images that formed the basis for the possession of child pornography charges against him. Id. Clark was convicted on the possession charges, and on appeal, he argued, in part, that the State had failed to present sufficient evidence that he knowingly possessed child pornography because the images were located in either deleted files or in unallocated hard drive space on his computer. Id. at 19. Specifically, he alleged that, based upon the evidence submitted at trial, it was reasonable to conclude that the majority of the illicit images were the result of unsolicited "pop-ups" that he immediately deleted, and, thus, that he did not knowingly possess those images. Id. With respect to one of the images, Clark argued that the image had been deleted and therefore there was no evidence that he possessed it on the date alleged in the indictment. Id.

[¶18] We rejected the defendant's argument that the charged files were not under his knowing possession or control because the files were found in "remote and inaccessible parts of the computer" or otherwise had been deleted. Id. at 19-20 (quotation omitted). We explained that the relevant inquiry regarding knowing possession of child sexual abuse images is whether a defendant knowingly possessed the images, in that he exerted some control over them, or whether the presence of the images on his computer was merely inadvertent. Id. at 20. We observed that this inquiry presents a question of fact. Id.

[¶19] Here, the trial court applied the mens rea analysis we adopted in Clark, and it drew reasonable inferences from facts proved and inferences found as a result of other inferences which were reasonably drawn therefrom. Based upon the defendant's "wide ranging and often incriminating statement[s]," as well as his intentional use of the software he installed on his computer, the trial court found that the State proved beyond a reasonable doubt that the defendant knowingly possessed the sixteen images that formed the basis for the possession charges and that "the presence of these images of child sexual abuse found on the defendant's computer was neither inadvertent nor accidental."

[¶20] The defendant argues that, in addition to proving that the presence of the sixteen charged images on his computer was not merely inadvertent, the State was required to prove, under Fossett, that he knew that those files contained child sexual abuse images. In his view, in order to knowingly possess or distribute something, one must know the content or nature of the thing possessed or distributed. Therefore, the defendant argues that the trial court erred by concluding that "[w]hether in fact the defendant actually viewed the images is not dispositive given the evidence of his intentional acquiring and control of the images."

[¶21] However, we disagree with the defendant's argument that the trial court "dispensed with Fossett's requirement" that the State prove knowledge of

6

the content and nature of the files in its order.  Our interpretation of a trial court order is a question of law, which we review de novo.  State v. Kay, 162 N.H. 237, 242 (2011).  In its order, the trial court concluded that the evidence proved beyond a reasonable doubt that the defendant knowingly acquired each of the sixteen specific files as charged in the indictments.  We read the trial court's order as finding sufficient circumstantial evidence that the defendant knew the content and nature of each of the files charged in the indictments.  The court found that the defendant "knowingly reach[ed] out on the internet and acquire[d] the images identified by the State."  The court correctly reasoned that whether the defendant viewed the images is not dispositive of the question of his knowledge of their content.[2]  Although it did not explicitly rely upon Fossett, the trial court nonetheless found that there was sufficient circumstantial evidence to prove that the defendant knew that the files he downloaded from BitTorrent contained child sexual abuse images.  Therefore, we find no error in the trial court's application of the legal standard for knowing possession.

[¶22] Turning to the evidence in this case, we conclude that because there was evidence that the defendant knew of the nature and contents of the files he downloaded to his computer and that the presence of those images was not inadvertent, there was sufficient evidence for the trial court to find, beyond a reasonable doubt, that the defendant knowingly possessed the sixteen charged files.  For example, the State's expert provided extensive testimony explaining that BitTorrent users must take a series of affirmative steps to obtain and download torrent files, load those torrent files into BitTorrent, and then download the files (that are referenced by the torrent files) onto the user's computer.  Specifically, the expert testified that a user must: (1) use keyword search terms to "search for desired content through one of the indexing sites"; (2) "selectively choose" a torrent file that "best matches the description"; (3) download that torrent file from the indexing site and then load it into BitTorrent; (4) select the files referenced by the torrent to be downloaded by BitTorrent; and (5) finally select a command to download the specific content.  Based on this explanation, there was evidence supporting the conclusion that the defendant, by intentionally following the steps required to download content from BitTorrent, knowingly obtained child sexual abuse images from BitTorrent and downloaded the sixteen charged files to his computer.

---

[2] For example, other courts have found that evidence of a defendant's search terms, internet browser history, or file names may constitute circumstantial evidence of knowledge of a file's content.  See, e.g., United States v. Johnson, 775 F. App'x 794, 800 (6th Cir. 2019) ("When search terms specific to child pornography are found on a computer, it is persuasive circumstantial evidence that the user knowingly possessed child pornography." (brackets and quotation omitted)); United States v. Kain, 589 F.3d 945, 949 (8th Cir. 2009) (defendant's internet browsing history evidenced repeated accessing of site containing child pornography); Crabtree v. Commonwealth, 455 S.W.3d 390, 400 (Ky. 2014) ("The proof that Crabtree chose files with names clearly indicative of child pornography and clicked on these files to start their downloads demonstrated knowing possession.").

[¶23] Although there was no evidence regarding where the files were located on the defendant's computer, the defendant maintains, and the State does not dispute, that they were found in his default download folder. Unlike cases in which courts have found insufficient evidence of knowing possession because a defendant "lacks knowledge about the . . . files, and concomitantly lacks access to and control over those files," United States v. Kuchinski, 469 F.3d 853, 863 (9th Cir. 2006), neither party disputes that the defendant exerted control over the files he downloaded to his default download folder.

[¶24] The defendant nonetheless argues that, because torrent files may reference hundreds or thousands of files, it was reasonable to conclude that he inadvertently downloaded illicit files. Indeed, the State's expert testified that "a given torrent could actually reference thousands of files in one torrent," and that, "by downloading a single torrent, a user could potentially download any number of different files." However, he explained that this situation is uncommon and that generally, torrent files reference between thirty and one hundred files, and that a user is presented with those file names before downloading. The State did not present evidence regarding how the defendant obtained the charged files, but the forensic investigator testified that there were "several hundred" torrent files with "names that were consistent with child exploitation files" on the defendant's computers. Therefore, although it may have been possible that the defendant downloaded child sexual abuse images while downloading large numbers of files, there was circumstantial evidence that he knew the nature and content of the files he obtained from BitTorrent.

[¶25] Further, we reject the defendant's argument that, without evidence that he accessed or viewed the charged files, there was insufficient evidence of his knowing possession. The trial court correctly reasoned that "[w]hether in fact the defendant actually viewed the images is not dispositive given the evidence of his intentional acquiring and control of the images." Because the files were accessible to the defendant and because there was evidence that he affirmatively acted to download the charged files to his computer, we conclude that there was sufficient evidence that he knowingly possessed the files charged in the indictments. Therefore, even without evidence that the defendant viewed the images downloaded to his computer, there was sufficient evidence to prove that the defendant exerted control over the files he downloaded.

[¶26] In addition, the defendant's admission to law enforcement that he had in the past viewed and downloaded child pornography supports our conclusion. At trial, the court admitted into evidence a recording of the defendant's March 2018 interview with law enforcement. During that interview, the defendant admitted that he had on numerous occasions viewed child pornography and that he had been addicted to pornography in the past. He conceded that he returned to sites containing child pornography because he was curious to see "what is out there," and that he started "finding stuff" that

8

"hooked into" him. The defendant explained that he often downloaded content without looking at it, although he went through his downloads attempting to delete any unwanted or illegal content. He also admitted that he downloaded files using BitTorrent overnight, and that "sometimes I think to myself wait a second . . . overnight it's just floatin' out there you know anybody could see what you're doing so when you showed up today I was thinking you know that's probably it."

[¶27] In State v. Howe, 159 N.H. 366, 376-77 (2009), we explained that evidence that a defendant seeks out and views child pornography on a regular basis is relevant to show that the defendant acted knowingly. In Howe, the defendant argued that the trial court erred by admitting evidence of additional, uncharged child pornography images under New Hampshire Rule of Evidence 404(b). Id. at 375-76. Although we noted that the trial court made no findings with respect to the three prongs for admissibility under Rule 404(b), we concluded that the record supported the court's implicit findings. Id. at 376-77. We reasoned that evidence found on the defendant's computer was probative of the defendant's intent and knowledge because he sought out and repeatedly accessed websites containing child pornography. Id. at 376. Similarly, here, evidence of the defendant's admissions that he had viewed child pornography in the past provided circumstantial evidence that he knowingly possessed the sixteen charged files.

[¶28] In Howe, 159 N.H. at 377, we also held that evidence of uncharged child pornography on a defendant's computer may be relevant to show that the defendant acted knowingly. We concluded that uncharged images found on the defendant's computer were probative of the defendant's lack of mistake or accident. See id. We reasoned that the images were relevant to show that the defendant sought out child pornography and did not accidentally acquire images of child pornography in pursuit of adult pornography. See id. Additionally, in Clark, when determining whether there was sufficient evidence that the defendant knowingly possessed child sexual abuse images, we acknowledged that the defendant's possession of additional child pornography, saved on his computer's hard drive, was further evidence of his knowing possession of the child sexual abuse images specified in the charges. See Clark, 158 N.H. at 20. Other courts have consistently held that evidence of other, uncharged child pornography files on a defendant's computer is probative of the defendant's intent, knowledge, and lack of mistake. See United States v. Morrow, 79 F.4th 1169, 1177-78 (10th Cir. 2023); United States v. Hardrick, 766 F.3d 1051, 1055-56 (9th Cir. 2014) (citing cases).

[¶29] Here, the forensic investigator discovered "several hundred" torrent files on the defendant's computers with names consistent with child sexual abuse images. The investigator recalled files named "12-year-old" or "15-year-old," and a "series" from a foreign magazine "that featured child erotica, anywhere from preteen girls to single digits, like 8, 9-year-old females, and that

9

ranged from anywhere from in bathing suits, to lingeries, to nude." The investigator concluded that the defendant's files "kind of ran the gamut from not [necessarily] illegal child exploitation material up to child sexual abuse material." This evidence was probative of the defendant's knowledge that his downloads contained child pornography.

[¶30] Although the defendant argues that the trial court could reasonably have found that he was unaware that there were unlawful files on or downloaded from his computer as charged in the indictments, we disagree. Because the State presented sufficient circumstantial evidence that the defendant exercised control of the files he downloaded to his default downloads folder, and because there was evidence that the defendant knowingly sought out child pornography, we cannot conclude that no rational finder of fact would have found the elements of knowing possession beyond a reasonable doubt. See Saintil-Brown, 172 N.H. at 117. Thus, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, we conclude that the evidence excluded all reasonable conclusions except guilt. See id. Accordingly, the record includes sufficient evidence to convict the defendant of knowingly possessing the sixteen files specified in the indictments.

B. Distribution Charges

[¶31] The defendant also challenges the sufficiency of the evidence used to convict him of knowingly distributing child sexual abuse images. RSA 649-A:3-a, I(a) provides that no person shall "[k]nowingly sell, exchange, or otherwise transfer, or possess with intent to sell, exchange, or otherwise transfer any visual representation of a child engaging in or being engaged in sexually explicit conduct." To convict the defendant of distribution of child pornography, the State was required to prove that the defendant knowingly "exchanged or otherwise transferred a visual representation of a child under the age of eighteen years engaged in sexually explicit conduct," specifically, the files described in each indictment alleging distribution.

[¶32] In challenging the sufficiency of the evidence of this offense, the defendant similarly argues that the State failed to introduce evidence sufficient to prove that he knew that he was distributing child sexual abuse images by making files on his computer available to others through BitTorrent. He argues that the presence of child pornography in a default download folder that is shared by default is insufficient to establish knowing distribution. The trial court found that the State presented sufficient evidence that the defendant was aware that his use of BitTorrent "permitted other computer users with the same software to remotely access his computer files at any time without his permission or knowledge and download its contents, including child sexual abuse images."

10

[¶33] Numerous federal courts of appeals have addressed the issue of whether a defendant who places files containing child pornography in a shared folder is guilty of knowingly distributing child pornography when those files are downloaded by others. For example, in United States v. Chiaradio, 684 F.3d 265, 281-82 (1st Cir. 2012), the United States Court of Appeals for the First Circuit considered whether there was sufficient evidence to prove that the defendant knowingly distributed child pornography under 18 U.S.C. § 2252(a)(2). Relying on the Tenth Circuit's reasoning in United States v. Shaffer, 472 F.3d 1219 (10th Cir. 2007), the court held that, "[w]hen an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred." Id. at 282. The Chiaradio Court explained that "[t]he fact that the defendant did not actively elect to transmit those files is irrelevant." Id. Based upon evidence that the defendant downloaded LimeWire, a peer-to-peer file-sharing network, and chose to make files available for sharing, the court concluded that the evidence was sufficient to support the district court's finding that the defendant knowingly transmitted child pornography to an undercover law enforcement officer. See id.

[¶34] In an opinion authored by then-Judge Neil Gorsuch, the Tenth Circuit in Shaffer analogized passive distribution over a peer-to-peer network to a self-serve gas station, explaining that "[j]ust because the operation is self-serve, or . . . passive, we do not doubt for a moment that the gas station owner is in the business of 'distributing' . . . gasoline; the raison d'etre of owning a gas station is to do just that." Shaffer, 472 F.3d at 1223-24. The court affirmed the defendant's conviction based upon evidence that the defendant did not select a folder that was kept private and that he had admitted to law enforcement that he knew other people had downloaded child pornography from his shared folder. Id. at 1224. Numerous federal courts of appeals have adopted the reasoning in Shaffer, see, e.g., United States v. Clarke, 979 F.3d 82, 94-95 (2d Cir. 2020); United States v. Stitz, 877 F.3d 533, 537-38 (4th Cir. 2017), as have appellate courts in our sister states, see, e.g., Redkovsky v. State, 203 A.3d 23, 31-33 (Md. Ct. Spec. App. 2019) (collecting cases); Maddox v. State, 816 S.E.2d 796, 802 (Ga. Ct. App. 2018); People v. Rowe, 318 P.3d 57, 61 (Colo. App. 2012).

[¶35] Although we have not yet addressed knowing distribution of child sexual abuse images in the context of a peer-to-peer file-sharing network such as BitTorrent, we too are persuaded by the reasoning in Shaffer. We agree that, regarding the element of knowing distribution, "[w]hen an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred." Chiaradio, 684 F.3d at 282.

[¶36] The defendant acknowledges that Shaffer and Chiaradio state the majority view on the issue of "passive distribution" by way of file-sharing networks. Nonetheless, he relies upon United States v. Dillingham, 320 F. Supp. 3d 809 (E.D. Va. 2018), which, he asserts, is factually analogous to the

11

case at hand. His reliance is misplaced. In Dillingham, a federal district court granted the defendant's motion to set aside his convictions after concluding that the prosecution had failed to produce evidence that established beyond a reasonable doubt that the defendant knew that he possessed the child pornography that he was charged with distributing in violation of 18 U.S.C. § 2252(a)(2). Dillingham, 320 F. Supp. 3d at 815-18, 828.[3] The court separately considered the sufficiency of the evidence regarding whether the defendant: (1) knowingly possessed the images that were allegedly distributed, and (2) knew that uTorrent, a peer-to-peer file-sharing software, made his shared files available to others. Id. at 815-18. As to the first inquiry, the district court concluded that the government's evidence was insufficient to prove beyond a reasonable doubt that the defendant knew that the files at issue in his distribution conviction were child pornography and, on that basis, it set aside the defendant's conviction for knowing distribution of child pornography. Id.

[¶37] However, with respect to the second sufficiency inquiry, and the one most germane here, the court found that the government's evidence was sufficient to prove that the defendant knew that files in his shared folder were accessible to others. Id. at 817-18. In reaching its conclusion regarding the defendant's understanding of uTorrent, the Dillingham Court relied upon the defendant's statements that he understood that files could be shared through uTorrent, although the court acknowledged that it was not clear whether the defendant understood that sharing could occur without affirmative action on his part or whether he was agreeing with law enforcement's explanation of uTorrent. See id. Ultimately, the court ruled that there was sufficient evidence of the defendant's familiarity with uTorrent for a juror to reasonably conclude that the defendant knew "that files on his computer downloaded through uTorrent software were accessible to others . . . and could therefore 'distribute' those files to others once they were downloaded." Id. at 818.

[¶38] Here, as in Dillingham, the State presented evidence that the defendant had an adequate understanding of BitTorrent to realize that he was sharing files from his computer. The defendant repeatedly explained that BitTorrent takes pieces of files from users to assemble a complete file download. Although his statements are not entirely clear, the State presented some evidence that the defendant understood that, by using BitTorrent to download files and obtain faster download speeds, he agreed to share files from his own computer. In addition, although the defendant denied sharing files from his computer, he agreed with James that BitTorrent, as a file-sharing network, functions by obtaining pieces of files from its users, and, thus, that

---

[3] In his motion, Dillingham acknowledged that the evidence was sufficient to prove that at some point he knowingly possessed the child pornography that he was charged with distributing. United States v. Dillingham, 320 F. Supp. 3d 809, 814-15 (E.D. Va. 2018). Although the defendant was originally indicted with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(b), the government decided to dismiss that particular count immediately before trial and the possession count was dismissed. Id. at 811.

12

its users share files from their own computers.  He agreed that "that's [a] very smart conclusion" and that "that's probably how it works," although he then noted this recognition "may be self-incriminating for me."

[¶39] Further, the State's expert explained that the primary purpose of BitTorrent is to share content with other users and that the BitTorrent user licensing agreement clearly states that "by use of this program, you will be sharing content back out onto the network."  He also testified that there are "indicators within the interface of the BitTorrent client to show that you're actually uploading content or sharing content to other users."  The expert witness explained that the process by which a user obtains content through BitTorrent involves a series of affirmative steps, which includes downloading content that then immediately becomes available to others.  Thus, there was sufficient evidence such that a rational finder of fact could conclude that the defendant affirmatively downloaded files from BitTorrent into his shared downloads folder that then were available to others to download.

[¶40] In addition to evidence regarding the defendant's understanding that he shared files by using BitTorrent, James testified that he successfully downloaded child sexual abuse images from the defendant's computer using investigative software on numerous occasions between July 2017 and March 2018.  The defendant's admissions during his interview with law enforcement that he had viewed child pornography aligned with this time period.  Although the defendant did not recall precisely when he viewed these images on the internet and through BitTorrent, he estimated that he came across such images during the summer of 2017, and he suggested that he had seen child sexual abuse images as recently as a few weeks before the March 2018 interview.  In reviewing his investigative software records, James testified that, in July 2017, for example, he downloaded a file from the defendant's computer that was located in a torrent folder called "Asian girls [Y.T.] nine-year-old." From this evidence, a reasonable fact finder could conclude that the defendant knowingly downloaded child sexual abuse images into his shared downloads folder and subsequently shared files from that folder with other users.

[¶41] Based on this evidence, the trial court could rationally have concluded beyond a reasonable doubt that the defendant had the required scienter for knowing distribution.  See Chiaradio, 684 F.3d at 282.  Thus, considering all of the evidence and taking inferences therefrom in the light most favorable to the State, we conclude that the defendant has failed to establish that the evidence does not exclude all reasonable conclusions except guilt.  See Saintil-Brown, 172 N.H. at 117.

Affirmed.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.